CHARLIE DICKSON v. THE STATE.

No. 19284. Delivered January 26, 1938.
Rehearing denied February 23, 1938.

The opinion states the case.

*Hancock & Hancock,* of Waxahachie, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is murder; the punishment, confinement in the penitentiary for eleven years.

Appellant drove his automobile against the back end of a truck belonging to the deceased, Robert Franklin. It was appellant's version that deceased drove his truck in front of him so suddenly that he (appellant) was unable to stop his car. In any event, the fenders of appellant's car were damaged. After the

collision deceased drove away. Later appellant met deceased and demanded that he pay him for the damage done his car. When deceased failed to meet his demand appellant shot him to death with a shotgun.

Appellant testified that he had served in France during the World War; that shellshock had permanently affected his nerves; that the sudden slamming of a door or noise of any kind made him very nervous. At this juncture we quote from appellant's testimony as follows:

"I did not know Robert Franklin personally; I just knew he was a negro around Ennis. I had seen him at times but never had any business with him at all, and I never had any fuss with him or anything like that; no trouble of any kind before the day of this trouble.

"As to the collision between my car and his truck, I was coming down the street and Franklin ran in front of me and he was so close to me that I could not stop and I hit him and that knocked me off my balance. I asked him if he would pay for my damage and he said he would not. Of course that excited me, the damage to my car, and it knocked me off my balance and I really don't know just what happened after that, the next thing I realized was I woke up and had my gun; I was traveling down the street in my car when this shooting happened. I had started that afternoon to go rabbit hunting is how I happened to have my gun in my car. This was somewhere around 4:30 or 4:45 o'clock, I did not look at my watch. I did buy some shotgun shells that afternoon around I would say 4:00 o'clock which I intended to go rabbit hunting with. This was before any collision occurred between my car and the truck the deceased was driving. Of course, I did not know we were going to have any collision at the time I bought the shells. I do not remember having any argument or quarrel with the deceased before the shooting; if anything like that happened I do not remember it."

E. L. Owens, a witness for appellant, testified that he was a railroad conductor; that appellant had worked for him as a brakeman for a number of years; that he had observed that appellant was highly nervous; that the slamming of a door would cause appellant to jump. The witness said: "I just noticed that during his work as brakeman that he seemed to be nervous all the time."

The testimony was to the further effect that appellant bore a good reputation as a peaceable and law-abiding citizen.

Omitting the formal parts, we quote the indictment, as follows:

"Charlie Dickson, on or about the 29th day of January, A. D. 1937, and anterior to the presentment of this indictment, in the county and state aforesaid, did then and there voluntarily, and with malice aforethought kill Robert Franklin by shooting him with a gun."

Appellant's contention that the indictment is insufficient, in failing to aver that he "unlawfully" killed deceased, can not be sustained. It is directly alleged that the killing was done voluntarily and with malice aforethought.

Again, appellant contends that the indictment is not sufficient, in failing to describe the weapon used in the commission of the offense. The description of the weapon as a gun was sufficient.

We are unable to reach the conclusion that paragraph 12 of the court's charge placed the burden of proof on the appellant. The court instructed the jury, in substance, that if they found the appellant guilty of murder they could not assess his punishment for a longer term than five years unless they believed beyond a reasonable doubt that he "was prompted and acted with his malice aforethought."

Appellant now contends that he was entitled to an instruction on the law of temporary insanity. If the issue was raised— and this is not conceded—appellant failed to except to the charge of the court for its failure to submit such an instruction.

It is recited in bill of exception No. 5 that Hugh Fitzgerald, a witness for the State, was permitted to testify that deceased "was crippled and had a peg leg." There is nothing in the bill of exceptions to show that said testimony was not relevant to some issue raised by the evidence.

We think the testimony set forth in bill of exception No. 6 to the effect that deceased begged bystanders to keep the appellant from shooting him was properly admitted as res gestae.

Bill of exception 7 brings forward appellant's objection to testimony of a State's witness to the effect that appellant stated after shooting deceased that he (deceased) was going to pay him for the damage to his automobile. Appellant's objection to the testimony was based on the ground that he was under arrest. As qualified by the court, it is shown that the declaration was admissible as res gestae. Moreover, the qualification states that the same testimony was given by other witnesses without objection on the part of appellant. The bill fails to reflect error.

The judgment is affirmed.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

GRAVES, JUDGE.—Appellant complains because the trial court failed to charge the jury on the issue of temporary insanity at the time of the commission of the offense herein charged. His attorney did not object to the charge of the court at the time because of such omission, nor request a special charge thereon, and is heard the first time to complain thereof in his amended motion for a new trial, which was filed on June 5, 1937, the trial being had on March 16, 1937. No exceptions were taken to the court's failure to so charge, and it seems to us that such objection comes too late. In our opinion we are doubtful as to whether or not the appellant was entitled to such charge. The testimony relative thereto is set forth in our original opinion, and about all that appellant can complain of is not to have remembered any argument or quarrel with the deceased; he said he was nervous at all times, and that the sudden slamming of a door seemed to upset him and mentally unbalance him. We think this matter was properly disposed of in our original opinion.

Appellant again urges an objection to the action of the court in allowing the witness Hugh Fitzgerald to testify that deceased was crippled and had a peg leg. We feel sure this is a true statement or same would have been controverted, and we can see no serious objection to letting the jury know what kind of a person the deceased was.

The other matters complained of in appellant's motion seem to have been heretofore considered by this court in its original opinion, and appear to us to have been properly disposed of in that opinion.

In our opinion the matters herein complained of have been properly disposed of, and the motion for rehearing is overruled.