**Thomas Ray O'BRIANT, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 54869 and 54870.**

Court of Criminal Appeals of Texas.

Oct. 5, 1977.

Lawrence B. Mitchell, Dallas, for appellant.

Henry M. Wade, Dist. Atty. and Gary M. Love, Dan Garrigan and Gerry Holden, Asst. Dist. Attys., Dallas, Jim D. Vollers, State's Atty., and David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

DAVIS, Commissioner.

Appellant was convicted, on his pleas of guilty before a jury in a joint trial, of the offenses of aggravated robbery (Cause No. 54,869) and attempted murder (Cause No. 54,870). Punishment was assessed at thirty years and twenty years, respectively.

While the sufficiency of the evidence is not challenged, a brief review of same is deemed necessary in order that appellant's contentions can be discussed with greater clarity.

On September 26, 1976, at about 9:30 p. m., appellant entered Chili's Restaurant in Dallas, sat down at a table, placed his order with the waitress, and asked her to have the manager come out and talk to him. Bob Gibson, assistant manager of the restaurant, went to appellant's table, where appellant produced a pistol and pointed it at Gibson. Gibson "bolted" out the door and called police from a convenience store across the street.

In the meantime, appellant grabbed Shari Swift, a waitress, and demanded money while exhibiting the pistol. Appellant obtained a sum of money and then walked with Swift to the back door of the restaurant, where he released her.

The record further reflects that Richard Mitchell, an employee of Chili's, was returning to the restaurant on the night in question. As he opened his door in the parking lot, he observed the window glass shatter and felt something strike his neck. He saw a man fleeing, but did not give chase. The evidence showed that appellant had shot Mitchell in the neck with a .38 caliber pistol while fleeing the scene of the robbery.

Appellant contends that the court erred in both causes in overruling his motions to quash the indictments. In the pertinent averment in the indictment charging appellant with aggravated robbery, it was alleged that appellant committed the offense by "using and exhibiting a deadly weapon, to wit: a firearm." In the indictment charging attempted murder, appellant's complaint is directed to that portion of the indictment charging him with having committed the offense by shooting the complainant "with a firearm."

Appellant urges that the use of the word "firearm" is too general and vague and does not put an accused on notice of the charges against him. Appellant urges that the indictment should have specifically alleged that the firearm used was a pistol.

The pertinent portions of V.T.C.A. Penal Code, Sec. 29.03, "Aggravated Robbery," provide:

"(a) A person commits an offense if he commits robbery as defined in Section 29.02 of this code, and he

\* \* \* \* \* \*

(2) uses or exhibits a deadly weapon."

The new Penal Code in Chapter 1, "General Provisions," sets forth "Definitions" in V.T.C.A. Sec. 1.07, which provides in pertinent part:

"(a) In this code:

(1) 'Deadly weapon' means:

(A) a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury; or

(B) anything that in the manner of its use or intended use is capable of causing death or serious bodily injury."

In *Walker v. State*, 543 S.W.2d 634, a question was raised on appeal from a conviction for aggravated robbery case as to whether the instrument used was a "firearm." There we noted that "while it appears that the definition of firearm [set forth in V.T.C.A. Sec. 46.01(3)] is designed for Chapter 46, 'Weapons,' in Title 10, 'Offenses Against Public Health, Safety, and Morals,' we find that the definition furnishes guidance in determining whether the weapon in the instant case is a 'firearm.'" V.T.C.A. Penal Code, Sec. 46.01, provides in pertinent part:

"In this chapter:

\* \* \* \* \* \*

(3) 'Firearm' means any device designed, made or adapted to expel a projectile through a barrel by using the energy generated by an explosion or burning substance or any device readily convertible to that use."

In *Mosley v. State*, 545 S.W.2d 144, reversal resulted in an appeal from a conviction for aggravated assault, this Court finding that a "B.B. gun" whose use was not calculated to produce death or serious bodily injury and which was not used to strike victim was not a "deadly weapon" and thus the assault by use of such a "B.B. gun" was not aggravated by use of deadly weapon. It was noted in *Mosley* that the gun in question was a spring activated air gun and that evidence was produced at trial that such a gun did not meet the statutory definition of a firearm.

In *Dickson v. State*, 113 S.W.2d 528, a 1938 opinion by the Court of Criminal Appeals, it was held that an indictment charging that accused did voluntarily and with

malice aforethought kill deceased by shooting him with a gun sufficiently described the weapon used in the commission of the offense.

We find "firearm" to be far less vague and general than the word "gun." It could reasonably be urged that the word "gun" is broad and general enough to include such diverse instrumentalities as a "B.B. gun," a "blow gun," a "pop gun" or even a "grease gun." Clearly, the word "firearm" has a much more limited meaning.

■ We find that the indictments in question charge the commission of the offenses "in ordinary and concise language in such a manner as to enable a person of common understanding to know what is meant, and with that degree of certainty that will give the defendant notice of the particular offense with which he is charged." Art. 22.11, V.A.C.C.P.

The court did not err in overruling appellant's motions to quash the indictments.

Appellant urges that reversal of both convictions should result from the court's failure to grant a mistrial as the result of the following argument by the prosecutor:

"I want you to think about the time you have read in the paper or you've seen on television about the crimes in our community. About people getting shot up. About people getting robbed. About people getting . . . ."

Appellant's objection to the argument was sustained and the jury was instructed to disregard. Motion for mistrial was overruled.

Appellant urges that the argument was outside the record, prejudicial and constituted a plea to the jury to assess additional punishment based upon its consideration of the crime rate.

In *Gholson v. State*, Tex.Cr.App., 542 S.W.2d 395, complaint was made of the argument, "I don't recall when the last person was electrocuted. I do know that since the last person was there has been a hundred percent increase in crime." This Court held that while the prosecutor exceeded the scope of proper response to de-

fense counsel's argument that the death penalty was not a deterrent, the court's prompt action in sustaining the objection and instruction to the jury to disregard rendered the error harmless.

The argument complained of in the instant case clearly is not as prejudicial and harmful as the one in *Gholson*.

■ We would be avoiding reality to not recognize that jurors have read and heard of murders and robberies through the news media. In *Cunningham v. State,* Tex.Cr. App., 484 S.W.2d 906, and *Holloway v. State*, Tex.Cr.App., 525 S.W.2d 165, arguments similar to the one complained of herein were held to be proper pleas for law enforcement. Error, if any, was rendered harmless by the court's prompt action in sustaining the objection and instructing the jury to disregard.

Appellant contends that his conviction for the offense of attempted murder was barred by the "carving doctrine" since the robbery and shooting constitute a single continuous criminal transaction.

Appellant cites *Ex parte Evans*, Tex.Cr. App., 530 S.W.2d 589. The facts in *Evans* were that the defendant produced a gun at the scene of the crime, took the victim's wallet, shot the victim in the stomach, forced the victim to run away, and then stole the victim's automobile. Appellant was first convicted of robbery and at a subsequent date was tried and convicted for theft of the automobile. This Court held that the continuous nature of the assaultive action by the defendant would have permitted prosecution for one offense, robbery, and that the prosecution for theft was barred by the carving doctrine.

■ In reviewing recent cases interpreting the doctrine of carving, this Court in *Hawkins v. State*, 535 S.W.2d 359 said, "The common factor has been an uninterrupted and continuous sequence of events or assaultive acts directed toward a single victim." See *Ex parte Birl*, Tex.Cr.App., 545 S.W.2d 169.

The instant case is more like *Harris v. State*, Tex.Cr.App., 516 S.W.2d 931, where the defendant left his car, entered a service station and robbed the attendant. Upon returning to his car, defendant was approached by a police officer, who received fatal gunshot wounds in a scuffle with the defendant. This Court held that two separate and distinct transactions transpired, the robbery of the station attendant and the shooting of the officer, and that improper carving did not result in charging the defendant with murder and robbery.

In *Lamberson v. State*, Tex.Cr.App., 509 S.W.2d 328, and *Ex parte Caldwell*, Tex.Cr. App., 537 S.W.2d 265, the victim in two assaultive acts was the same but the two offenses were not committed at the same place and there was a time lapse between the two attacks. It was held under these circumstances that the State did not improperly carve two offenses from the same transaction.

■ In a very recent case by the United States Supreme Court in *Harris v. Oklahoma*, —— U.S. ——, 97 S.Ct. 2912, 53 L.Ed.2d 1054 (1977), it was held that a defendant convicted under a state law requiring proof of the underlying felony of robbery with firearms in order to establish the intent necessary for a felony murder conviction was protected by the Double Jeopardy Clause against a subsequent charge of robbery with firearms, since the Double Jeopardy Clause bars prosecution for a lesser crime following conviction of a greater crime that could not have been obtained without conviction of the lesser crime.

■ The distinction in *Harris v. Oklahoma*, supra, and the instant case is readily obvious. The conviction for attempted murder was not dependent upon proof of robbery in the case before us. As in *Harris v. State*, supra, there were two victims and two separate and distinct transactions. We find there was no improper carving involving double jeopardy.

The judgments are affirmed.

Opinion approved by the Court.