Opinion issued June 9, 2005











 











In The
Court of Appeals
For The
First District of Texas




NO. 01-04-00067-CR




MICHAEL ANTHONY MORENO, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 338th District Court
Harris County, Texas
Trial Court Cause No. 952,558




MEMORANDUM OPINION
          Michael Anthony Moreno, appellant, pleaded not guilty to burglary of a
habitation with intent to commit theft. The jury found him guilty and affirmatively
answered the special issue submitted on the use of a deadly weapon. The judge
assessed punishment at 45 years’ confinement. In three points of error that are
reordered as follows, appellant contends that (1) the evidence is legally insufficient
to support the jury’s affirmative finding that he used or exhibited a firearm; (2) the
trial court erred in admitting a BB gun into evidence; and (3) the trial court erred in
failing to grant his motion for directed verdict because the State failed to corroborate
accomplice-witness testimony. We affirm.
                                                    BACKGROUND
          On September 27, 2002, Janet Ferguson, complainant, was lying in bed when
she heard footsteps outside her bedroom door. A man opened the door, put a small
silver gun to Ferguson’s head, and told her to close her eyes. After another assailant
entered Ferguson’s bedroom, the men blindfolded Ferguson and bound her hands and
feet with duct tape. As one assailant rummaged through Ferguson’s dresser, another
got into her bed and attempted to sexually assault her. After Ferguson heard an
unidentified woman’s voice over a Nextel phone telling the assailants to hurry and
to get out of there, the assailants left Ferguson’s bedroom.
          While Ferguson was attempting to unbind her feet, one assailant returned to her
bedroom, grabbed her, and led her to the kitchen to search for her purse. Ferguson
escaped and ran to a neighbor’s house.
          Ferguson later told the police that she was missing four television sets, a
computer, a purse containing four credit cards, and some jewelry. When Ferguson
called to cancel her credit cards the morning after the burglary, she learned that one
of her cards had been used at a Denny’s Restaurant four hours after the burglary. 
After watching a videotape made in the Denny’s Restaurant, Ferguson identified the
person using her credit card as a former employee who had worked in Ferguson’s
home office, Jacqueline Foster. Foster had worked for Ferguson for six months and
ran the office in Ferguson’s absence. Through her employment, Foster had toured
Ferguson’s house and knew that she lived alone. Ferguson was unable to identify the
assailant with the silver gun from the video, whom she had previously described to
investigators as a 20- to 30-year old Hispanic male with a goatee and a plaid shirt.
          After her bank returned a check to her that was stolen in the burglary, Ferguson
contacted Detective Frazee of the Harris County Sheriff’s Department. During his
investigation, Frazee found that Foster was employed by a limousine service at the
time of the offense. An employee of the limousine service also gave Frazee
information about appellant and indicated that appellant and Foster were living
together. Appellant and Foster were soon arrested and a number of items were seized
from their truck, including a BB gun, duct tape, two sets of gloves, and Foster’s
purse, which contained pawn tickets from a Cash America pawnshop. Foster gave
a written confession of her involvement in the burglary.
          The day following the arrests, another sheriff’s deputy took Ferguson to the
Cash America pawnshop, the pawnshop listed on the pawn tickets found in
appellant’s billfold and Foster’s purse, so that Ferguson could inspect the contents of
the items listed on the pawn tickets. Ferguson identified four items as belonging to
her: a rope chain, a rope bracelet, and two rings. The items were listed on four pawn
tickets seized from Foster’s purse. These pawn tickets listed appellant as the pledgor. 
A videotape provided by Cash America showed appellant and Foster entering the
pawnshop on November 11, 2002. The videotape showed appellant giving his
identification to the cashier, while Foster gave the property over to the cashier and
concluded the transaction.
          At trial, Foster identified appellant as one of four participants in the burglary
of Ferguson’s home.
DISCUSSION
Sufficiency of Jury Finding
          In his first point of error, appellant argues that the evidence is legally
insufficient to prove that he used or exhibited a firearm during the commission of the
charged offense because there is no evidence that the gun used during the robbery
was, in fact, a firearm. 
          A legal-sufficiency challenge requires us to determine whether, after viewing
the evidence in the light most favorable to the verdict, any rational trier of fact could
have found the essential elements of the offense beyond a reasonable doubt. King v.
State, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000); Howley v. State, 943 S.W.2d 152,
155 (Tex. App.—Houston [1st Dist.] 1997, no pet.). As the exclusive judges of the
facts, the credibility of the witnesses, and the weight to be given their testimony, the
jurors may believe or disbelieve all or any part of a witness’s testimony. McKinny v.
State, 76 S.W.3d 463, 468-69 (Tex. App.—Houston [1st Dist.] 2002, no pet.).
          The trial court posed a special issue to the jury that asked, “Do you the Jury
find beyond a reasonable doubt that the defendant used or exhibited a deadly weapon,
namely, a firearm, during the commission of the offense for which he has been
convicted or during the immediate flight therefrom?” The jury answered, “We [d]o.” 
The trial court, as part of its judgment, noted an affirmative finding that appellant had
used a deadly weapon, “[n]amely, [a] firearm,” in the commission of a felony offense.
          The Texas Penal Code defines a “deadly weapon” as the following: 
(A) a firearm or anything manifestly designed, made, or
adapted for the purpose of inflicting death or serious bodily
injury; or
 
(B) anything that in the manner of its use or intended use
is capable of causing death or serious bodily injury.

Tex. Pen. Code Ann. § 1.07(a)(17) (Vernon 2003). This Court has previously held
that a handgun is a “deadly weapon” per se under the Texas Penal Code. See Garner
v. State, 864 S.W.2d 92, 103 (Tex. App.—Houston [1st Dist.] 1993, pet. ref’d). 
However, the term “gun” may be a broader term than “firearm,” so as to include non-lethal instruments such as BB guns, blow guns, pop guns, and grease guns. O’Briant
v. State, 556 S.W.2d 333, 336 (Tex. Crim. App. 1977); Benavides v. State, 763
S.W.2d 587, 588 (Tex. App.—Corpus Christi 1988, pet. ref’d). 
          At trial, complainant testified that one of her assailants came “storming in [to
her bedroom], threw the door open, and put a gun to my head immediately.” One
assailant told her to “close your eyes or I’ll kill you.” Although she only saw it for
a “brief moment,” she recognized the object that her assailants placed against her
head as a gun. She described it by stating that “it appeared like a gun and it was
silver and it was little.” Complainant later testified that she believed she was hit over
the head with the same gun to stop her from running away after she freed her duct
tape-bound arms.
          The determination of what weight to give testimonial evidence is within the
sole province of the jury, as it turns on an evaluation of credibility and demeanor. 
Cain v. State, 958 S.W.2d 404, 408-09 (Tex. Crim. App. 1997). Thus, the jury was
free to believe all or any part of the testimony of the State’s witnesses, and disbelieve
all or any part of the witness testimony. A court of appeals must show deference to
such a jury finding. Id. at 409. Under the circumstances, we properly leave to the
jury the weight to give complainant’s testimony.
          The assailant’s statement, “Close your eyes or I’ll kill you,” is some evidence
that the silver gun was, in fact, a firearm capable of causing death or serious bodily
injury. See Bethel v. State, 842 S.W.2d 804, 807 (Tex. App.—Houston [1st Dist.]
1992, no writ) (“The jury may consider all the facts of a case when determining
whether a weapon is ‘deadly,’ including the words spoken by the accused.”). 
Viewing the evidence in the light most favorable to the verdict, a rational trier of fact
could have found that appellant committed burglary while using or exhibiting a
deadly weapon. Therefore, we hold that the evidence was legally sufficient to support
the jury’s affirmative finding on the issue of a deadly weapon. 
          Accordingly, we overrule appellant’s first point of error. 
Admission of Evidence
          In his second point of error, appellant asserts that the trial court erred in
admitting into evidence State’s Exhibit 50. Specifically, appellant contends that the
black BB gun found in his truck was not relevant. The State argues that the evidence
was properly admitted as proof of circumstances surrounding the occurrence of the
charged offense and the subsequent arrest of appellant. 
Relevancy
          Evidence must be relevant to be admissible; evidence that is not relevant is not
admissible. Tex. R. Evid. 402. “Relevant evidence” means evidence having any
tendency to make the existence of any fact that is of consequence to the determination
of the action more probable or less probable than it would be without the evidence.
Tex. R. Evid. 401. 
          Generally, an accused is entitled to be tried for the offense for which he is
charged and not for some collateral crime or for being a criminal generally. Couret
v. State, 792 S.W.2d 106, 107 (Tex. Crim. App. 1990); Maynard v. State, 685 S.W.2d
60, 66 (Tex. Crim. App. 1985). Exceptions to this rule allow extraneous matters to
be admitted if the extraneous matter is relevant to a material issue and the relevancy
value outweighs the prejudicial potential. Couret, 792 S.W.2d at 107. The State is
entitled to show the circumstances surrounding the arrest of an accused, except when
such evidence is inherently prejudicial and has no relevance to any issue in the case. 
Maddox v. State, 682 S.W.2d 563, 564 (Tex. Crim. App. 1985). Whether evidence
is relevant to any issue in a case lies within the sound discretion of the trial court. 
Williams v. State, 535 S.W.2d 637, 639-40 (Tex. Crim. App. 1976). An abuse of
discretion occurs when the trial court acts arbitrarily, unreasonably, or without
reference to any guiding rules and principles. Montgomery v. State, 810 S.W.2d 372,
380 (Tex. Crim. App. 1990). 
          In explaining the rules relating to evidence of circumstances surrounding an
accused’s arrest, the Court of Criminal Appeals stated
A good example of how these rules should be applied can
be found in the instant case. The trial court sustained
appellant’s objections to testimony concerning the recovery
of a stolen television during the search. Even though such
testimony concerned facts surrounding the search and
arrest of appellant, it did not relate to proving that he
possessed the heroin in question and could only be used to
prejudice consideration of whether appellant committed the
crime charged. 
Hernandez v. State, 484 S.W.2d 754, 755 n.2 (Tex. Crim. App. 1972).
          Evidence is relevant if it tends to make the existence of any fact that is of
consequence to the determination of the action more probable or less probable than
it would be without the evidence. Tex. R. Evid. 401. Even if the evidence is relevant,
we must determine whether the risk of unfair prejudice substantially outweighs the
probative value. Tex. R. Evid. 403; Goldberg v. State, 95 S.W.3d 345, 366 (Tex.
App.—Houston [1st Dist.] 2002, pet. ref’d). Relevant evidence may be excluded if
its potentially prejudicial effect outweighs its probative value. Tex. R. Evid. 403;
Swarb v. State, 125 S.W.3d 672, 681 (Tex. App.—Houston [1st Dist.] 2003, pet.
dism’d). The reviewing court, using an abuse-of-discretion standard, must “do more
than decide whether the trial judge did in fact conduct the required balancing between
probative and prejudicial values; the trial court’s determination must be reasonable
in view of all relevant facts.” Santellan v. State, 939 S.W.2d 155, 169 (Tex. Crim.
App. 1997) (citations omitted). A Rule 403 balancing test includes, but is not limited
to, the following factors:
(1) how probative is the evidence;
(2) the potential of the evidence to impress the jury in some
irrational, but nevertheless indelible way;          (3) the time the proponent needs to develop the evidence; 
          and 
          (4) the proponent’s need for the evidence. 
 
Reese v. State, 33 S.W.3d 238, 240-41 (Tex. Crim. App. 2000).
          The black BB gun that was recovered from Foster and appellant’s truck was
admitted, over appellant’s relevancy objection, during the direct examination of
Officer C. Williamson. Williamson’s testimony only mentioned the BB gun in a list
of approximately ten items that were seized from appellant’s truck. The record does
not show that the BB gun was used during the burglary. Although Ferguson testified
that one of her assailants held a little silver gun to her head, she never mentioned
seeing a black BB gun. Therefore, the BB gun was not probative of any fact of
consequence as the only eyewitness, Ferguson, did not see any of her assailants using
a BB gun during the burglary. Because the complaining witness testified that no BB
gun was ever exhibited during the burglary, the presence of such weapon
continuously before the jury would only inflame their minds and encourage juror
speculation and conjecture as to its use in past criminal activities. The evidence of
the BB gun had some potential to impress the jury in an irrational, but nevertheless
indelible, way because of the presence of the special issue on the use of a deadly
weapon that the jury was asked to answer. Because the State had already elicited
testimony from Ferguson regarding a silver gun that was used by one of her assailants
and seen by Ferguson, the BB gun evidence was not necessary for the jury to answer
the special issue on the use of a deadly weapon. Because the BB gun in question had
no relevance to any issue in the case, the trial judge abused his discretion in admitting
it into evidence. Therefore, we must consider whether this error was of such harm as
to cause the rendition of an improper judgment. 
Harmless Error
          The general rule is that a judgment will not be reversed for error in the
admission of evidence that did not injure the defendant. Cunningham v. State, 500
S.W.2d 820, 824 (Tex. Crim. App. 1973). The question is whether there is a
reasonable possibility that the evidence complained of might have contributed to the
conviction. See Harrington v. California, 395 U.S. 250, 254, 89 S. Ct. 1726, 1728
(1969).
          We must disregard nonconstitutional error if, after examining the record as a
whole, we have fair assurance that the error did not influence the jury or had but a
slight effect. See Tex. R. App. P. 44.2(b); Solomon v. State, 49 S.W.3d 356, 365 (Tex.
Crim. App. 2001). In making this determination, the question is not simply whether
there was sufficient evidence to support the verdict. Bagheri v. State, 119 S.W.3d
755, 763 (Tex. Crim. App. 2003). Instead, the reviewing court should consider the
entire record, including testimony, physical evidence, jury instructions, the State’s
theories and any defensive theories, closing arguments, and voir dire, if applicable. 
Id. (citing Motilla v. State, 78 S.W.3d 352, 355-56 (Tex. Crim. App. 2002)). 
Important factors include the nature of evidence supporting the verdict, the character
of the alleged error and how it might be considered in connection with other evidence
in the case. Bagheri, 119 S.W.3d at 763 (citing Motilla, 78 S.W.3d at 355).
          In this case, the BB gun was offered and admitted into evidence when Officer
Williamson discussed the items he seized while conducting an inventory of
appellant’s truck. Williamson described the BB gun as a Black Repeater caliber BB
pistol. On cross-examination, defense counsel drew attention to the fact that the gun
was black, not silver.
          In its closing argument, the State mentioned a firearm or a gun three times. 
However, the State never discussed the type of gun or the color of the gun. The
State’s first and second references to a firearm were made as the State summarized
the events of the burglary at the beginning of argument. The State recounted
We do know that there was a firearm pointed at her head. 
It was dimly lit. Whether someone had a goatee or not,
plaid shirt, just place yourself under the circumstances. 
You are sitting there, lying there [sic] your bed, minding
your own business, watching television, someone kicks in
that door. We know who that someone is, make no mistake
of it. Pointing a firearm at your head. 
The only other reference to a gun of any sort is shortly thereafter when the State
asserted, “And we know based upon Janet’s testimony that that person came in guns
ablazing, shut your eyes.” The State never described the gun in any more detail
during its closing argument. The State never drew a connection between the general
references to a “firearm” or “gun” made in its closing and the BB gun that the jury
saw when it was admitted into evidence as State’s Exhibit 50. 
          We do not have fair assurances that the mind of an average juror would have
found the State’s case less persuasive had the BB gun in question not been admitted
into evidence. Therefore, its admission into evidence was harmless error. See
Harrington, 395 U.S. at 254, 89 S. Ct. at 1728.
          Accordingly, we overrule appellant’s second point of error. 
Directed Verdict
          In his third point of error, appellant asserts the trial court erred in denying his
motion for directed verdict for lack of sufficient evidence to corroborate Foster’s
accomplice witness testimony.
          We review a complaint that the trial court erred in denying a motion for
instructed verdict as a challenge to the legal, not factual, sufficiency of the evidence. 
See Williams v. State, 937 S.W.2d 479, 482 (Tex. Crim. App. 1996) (citing Cook v.
State, 858 S.W.2d 467, 470 (Tex. Crim. App. 1993)); see also Youens v. State, 988
S.W.2d 404, 407 (Tex. App.—Houston [1st Dist.] 1999, no pet.).
          A conviction cannot be had upon the testimony of an accomplice unless
corroborated by other evidence tending to connect the defendant with the offense
committed; and the corroboration is not sufficient if it merely shows the commission
of the offense. Tex. Code Crim. Proc. Ann. art. 38.14 (Vernon 2005). In assessing the
sufficiency of corroborative evidence, we eliminate the testimony of the accomplice
witness from consideration and examine the testimony of other witnesses to ascertain
whether the non-accomplice evidence tends to connect the accused with the
commission of the offense. Hernandez v. State, 939 S.W.2d 173, 176 (Tex. Crim.
App. 1997). The non-accomplice evidence need not be sufficient itself to establish
the accused’s guilt beyond a reasonable doubt. Id. The law only requires that some
non-accomplice evidence tends to connect the accused to the commission of the
offense. Id. All the facts and circumstances in the case may be considered when
determining whether the accomplice testimony was properly corroborated. See Reed
v. State, 744 S.W.2d 112, 126 (Tex. Crim. App. 1988).
          Here, Foster testified that she and appellant discussed how to get money by
deciding on “[r]obbing [sic] a home.” Foster and appellant decided to rob Ferguson’s
home because Foster was familiar with the layout and contents of the home from
when she worked for Ferguson. Foster testified that she and appellant burglarized
Ferguson’s home on the night of September 27, 2003, with two other men, Ricky and
John. Foster stayed in the truck, while the three males retrieved items from
Ferguson’s home and loaded them in the truck. Foster communicated with appellant
when he was in Ferguson’s home through their use of two Nextel mobile phones that
functioned as walkie-talkies. Foster testified that neither she nor appellant had
permission to enter Ferguson’s home.
          The State produced non-accomplice testimony that an offense was committed
by at least two men and one woman. The State also produced non-accomplice
evidence that appellant had a relationship with Foster, that appellant was present
when Foster used complainant’s stolen credit card only four hours after commission
of the robbery, that a number of items allegedly used in the burglary, including duct
tape and two pairs of brown gloves, were found in appellant’s truck two months after
its commission, and that appellant used his identification to pawn a number of items
stolen from Ferguson with Foster at his side.
          The accomplice-witness rule is a statutorily imposed sufficiency review and is
not derived from the federal or state constitutional principles that otherwise define
legal- and factual-sufficiency review. Cathey v. State, 992 S.W.2d 460, 462-63 (Tex.
Crim. App. 1999). “The burden established by the Legislature is that there be other
evidence tending to connect the defendant with the offense.” Id. at 463. Having
reviewed the circumstances of the offense and the testimony from the
non-accomplices, we hold that sufficient non-accomplice evidence tends to connect
appellant to the commission of the offense, as required by article 38.14. See
Hernandez, 939 S.W.2d at 178. Because appellant only contends that the evidence
was insufficient without the accomplice testimony, we need not make the
determination whether the evidence was sufficient when all the evidence is
considered, including the accomplice-witness testimony. Id. at 176; Mendoza v.
State, No. 01-03-00783-CR, 2004 WL 2538280, at *4-5 (Tex. App.—Houston [1st
Dist.] Nov. 10, 2004, no pet.) (not designated for publication).
          Accordingly, we overrule appellant’s third point of error.
CONCLUSION
          We affirm the judgment of the trial court.
 
 
                                                             Sherry Radack
                                                             Chief Justice
 
Panel consists of Chief Justice Radack and Justices Jennings and Hanks.
Do not publish. Tex. R. App. P. 47.2(b).