Opinion issued August 31, 2007







 






In The

Court of Appeals

For The

First District of Texas






NO. 01-05-01149-CR






LUCIOUS TYLER, Appellant


V.


STATE OF TEXAS, Appellee






On Appeal from the 339th District Court

Harris County, Texas

Trial Court Cause No. 993919






MEMORANDUM OPINION


 A jury found appellant, Lucious Tyler, guilty of aggravated assault. Tex. Pen.
Code Ann. § 22.02(a)(2) (Vernon 2005). Appellant pleaded "true" to the
enhancement paragraphs alleging prior convictions for aggravated assault and
possession of a controlled substance, and the trial court sentenced him to 60 years'
confinement. In five points of error, appellant contends that (1) the evidence was
legally and factually insufficient to sustain his conviction; (2) his confrontation rights
under the Sixth Amendment to the United States Constitution were violated; (3) the
trial court erred in admitting hearsay testimony; and (4) the trial court erred in
denying his request to instruct the jury on the lesser-included offense of assault. We
affirm. 

Background

 In the early morning hours of July 3, 2004, the complainant, Jerry Jernigan,
was home watching television when he heard a knock at the front door. Appellant,
the complainant's wife's cousin (referred to by the complainant as his "cousin-in-law"), was at the door. The complainant testified that, because he and appellant
enjoyed a good relationship and because it was not unusual for appellant to visit at
"all hours of the night," he let appellant into the house. After the two men greeted
one another, appellant went to the complainant's restroom, and the complainant
returned to the living room to watch television. When appellant came back from the
restroom, he stood in the bar area, located several feet behind the couch on which the
complainant was seated. The complainant testified that the next thing he remembered
was "getting shot." He heard a "pop," he slumped forward on the couch, and then
he felt appellant remove his necklace and ring. (1) 

 After he was shot, the complainant lost consciousness for an unknown period
of time. He was eventually able to run to his neighbor's house for help. His neighbor
called 911. Houston Police Officer Gonzales was the first officer to arrive on the
scene, where she observed the complainant pacing back and forth in his driveway. 
Officer Gonzales noticed an entry wound, "about the size of a nickel," above the
complainant's left ear. She also noticed that he was bleeding from his ear and mouth. 
Believing the complainant's injuries to be life-threatening, Officer Gonzales
contacted the police department's Homicide Division. (2) While she and the
complainant waited for an ambulance to arrive, Officer Gonzales asked the
complainant to recount what had happened, and she attempted to get a description of
the suspect. The complainant told her that he let his "cousin-in-law" into his house
and that, after a few minutes, he was either "shot or hit in the head with something." 
Officer Gonzales testified that she heard the complainant say his cousin-in-law's
name was "Luther Taylor." 

 The complainant was then taken by ambulance to Ben Taub Hospital, where
he received medical treatment for his injury. The complainant testified that, as part
of the medical treatment he received, he underwent two surgeries. His initial surgery,
a "left temporal craniotomy" intended to stop the bleeding from his wound, took place
on the night that he was taken to the hospital following the shooting. The
complainant underwent a second surgery to remove bullet fragments from his jaw
approximately one month after being discharged from the hospital. The
complainant's medical records show that he was treated for a single gun shot wound
to the head. 

 Officers Miller and Brown, of the Houston Police Department's ("HPD")
Homicide Division, arrived at the scene after the complainant had been transported
to the hospital. Officers Miller and Brown worked with officers from HPD's Crime
Scene Unit to collect evidence from the complainant's home. No firearm was found
at the scene. In addition, no evidence that might be collected from a firearm, such as
shells or shell casings, was found. The officers did, however, recover a plastic bag
containing 66 grams of marijuana, three additional bags containing traces of
marijuana, and a digital scale. The complainant acknowledged that, around the time
he was shot by appellant, he was selling marijuana out of his house. According to the
complainant's testimony, he had, on prior occasions, sold marijuana to appellant. 

 Officers Miller and Brown continued their investigation of the shooting by
interviewing the complainant and his wife at the hospital. The complainant's wife
was asked whether she recognized the name "Luther Taylor." She indicated that she
did not recognize the name, but relayed that her cousin, appellant, had a similar name,
"Lucious Tyler." Officer Miller created a photo array using appellant's picture. He
then showed the array to the complainant, and the complainant identified appellant
as the man who shot him. 

Sufficiency of the Evidence

 In his third and fourth points of error, appellant contends that the evidence was
legally and factually insufficient to sustain his conviction for aggravated assault
because the State failed to prove, as set out in the indictment, that the weapon used
during the commission of the offense was a firearm. We disagree. 

Standard of Review

 In our legal-sufficiency review, we view the evidence in the light most
favorable to the verdict and ask whether any rational trier of fact could have found
the crime's essential elements beyond a reasonable doubt. Johnson v. State, 23
S.W.3d 1, 11 (Tex. Crim. App. 2000). When conducting a factual-sufficiency review,
we view all of the evidence in a neutral light. Cain v. State, 958 S.W.2d 404, 408
(Tex. Crim. App. 1997). We will set the verdict aside only if (1) the evidence is so
weak that the verdict is clearly wrong and manifestly unjust or (2) the conflicting
evidence is against the great weight and preponderance of the evidence. Johnson, 23
S.W.3d at 11. Under the first prong of Johnson, we cannot conclude that a conviction
is "clearly wrong" or "manifestly unjust" simply because, on the quantum of the
evidence admitted, we would have voted to acquit had we been on the jury. Watson
v. State, 204 S.W.3d 404, 416-17 (Tex. Crim. App. 2006). Under the second prong
of Johnson, we cannot declare that a conflict in the evidence justifies a new trial
simply because we disagree with the jury's resolution of that conflict. Id. Before
finding that evidence is factually insufficient to support a verdict under the second
prong of Johnson, we must be able to say, with some objective basis in the record,
that the great weight and preponderance of the evidence contradicts the jury's verdict. 
Id. 

Analysis

 Appellant was indicted for aggravated assault. A person commits aggravated
assault if he commits assault and, during the commission of the assault, he "uses or
exhibits a deadly weapon." Tex. Pen. Code Ann. §§ 21.01(a)(1), 22.02(a)(2)
(Vernon 2005). Although section 22.02(a)(2) only requires an allegation that
appellant used or exhibited a deadly weapon during the commission of an assault,
here, the State specifically alleged that the deadly weapon used in this case was a
firearm. (3) See id. Because the State specifically alleged that a firearm was used, it
assumed the additional burden of proving, beyond a reasonable doubt, that appellant
employed such a weapon in his assault on the complainant. See Gomez v. State, 685
S.W.2d 333, 336 (Tex. Crim. App. 1985) ("[W]here the State alleges unnecessary
matter which is descriptive of the essential elements of the crime, the State must
prove the descriptive matter as alleged."). 

 The court's charge defined a "deadly weapon" as "a firearm or anything
manifestly designed, made, or adapted for the purpose of inflicting death or serious
bodily injury; or anything that in the manner of its use or intended use is capable of
causing death or serious bodily injury." A firearm is a deadly weapon. Tex. Pen.
Code Ann. § 1.07(17)(A) (Vernon Supp. 2006). While the court's charge did not
define the term "firearm," section 46.01 of the Penal Code provides that a firearm is
"any device designed, made, or adapted to expel a projectile through a barrel by using
the energy generated by an explosion or burning substance or any device readily
convertible to that use." Tex. Pen. Code Ann. § 46.01(3) (Vernon 2003). 

 Here, the only testimony that explicitly used the term "firearm" was the
testimony of Officers Gonzales and Miller, stating that neither officer found shell
casings or other evidence that would have come from a firearm in the complainant's
home during the investigation of the shooting. The remainder of the testimony at trial
referred only to a "gun." The term "gun," in a different context, may be a broader
term than "firearm" and may include such nonlethal instruments as BB guns, blow
guns, pop guns, and grease guns. See Davis v. State, 180 S.W.3d 277, 286 (Tex.
App.--Texarkana 2005, no pet.) (citing O'Briant v. State, 556 S.W.2d 333, 335-36
(Tex. Crim. App. 1977)). The fact-finder is free to draw reasonable inferences and
make reasonable deductions from the evidence as presented to it within the context
of the crime. Davis, 180 S.W.3d at 286. Thus, absent any specific indication to the
contrary at trial, the jury may draw the reasonable inference or make the reasonable
deduction that the "gun" used in the commission of a crime was a "firearm." Id. 
(citing Wright v. State, 591 S.W.2d 458, 459 (Tex. Crim. App. 1979)). 

 Appellant challenges the sufficiency of the evidence by pointing out that
neither a firearm nor evidence of a firearm, such as shells or shell casings, was
recovered from the scene of the crime. Other evidence, however, demonstrates that
the complainant was shot with a firearm. The complainant repeatedly testified to
being "shot." At the time he was shot, the complainant stated that he "heard a pop . . .
a pow." When Officer Gonzales arrived at the scene, she noticed an entry wound,
"about the size of a nickel," above the complainant's left ear. The complainant's
medical records indicate that he was treated for a single "gunshot wound" to the head
and that "bullet fragments" were removed from his jawline. The report from the
paramedic who transported the complainant to the hospital listed the source of the
injury as "a handgun, pointblack [sic] distance, single projectile, small caliber . . . ." 

 Viewing the evidence in a light most favorable to the jury's verdict, we
conclude that a rational jury could have found beyond a reasonable doubt that
appellant's weapon was a firearm. Thus, the evidence is legally sufficient to sustain
appellant's conviction, and we overrule appellant's third point of error.

 We further conclude, after neutrally examining all of the evidence, that the
proof that the gun was a firearm was not so weak that the verdict was either clearly
wrong or manifestly unjust. Thus, the evidence is factually sufficient to sustain
appellant's conviction, and we overrule appellant's fourth point of error. 

Lesser-Included Offense Instruction

 In his fifth point of error, appellant contends that the trial court erred in
denying his request to instruct the jury on the lesser-included offense of assault. 
Appellant asserts that he was entitled to a charge on class A assault because the
misdemeanor assault was a lesser-included offense of aggravated assault and the
evidence raised the issue of class A assault because there was no evidence that a
firearm was used in this case. Appellant contends, alternatively, that "the evidence
was ambiguous on the precise nature of the weapon used."

 In his first assertion, appellant claims that assault is a lesser-included offense
of aggravated assault because (1) assault is a lesser-included offense of aggravated
assault and (2) there is "no evidence that a firearm was used as alleged in the
indictment." A defendant is entitled to a lesser-included offense instruction if
(1) proof of the charged offense includes the proof required to establish the lesser-included offense and (2) there is some evidence in the record that would permit a jury
rationally to find that, if the defendant is guilty, he is guilty only of the lesser offense. 
Ferrel v. State, 55 S.W.3d 586, 589 (Tex. Crim. App. 2001). Assault is not always
a lesser-included offense of aggravated assault. See, e.g., Irving v. State, 176 S.W.3d
842, 845 (Tex. Crim. App. 2005) (holding that simple assault by grabbing and falling
on victim was not a lesser offense of aggravated assault by striking victim with a bat). 
 The indictment alleged that appellant committed aggravated assault by
"unlawfully, intentionally and knowingly cause[ing] bodily injury to JERRY
JERNIGAN, hereinafter called the Complainant, by SHOOTING THE
COMPLAINANT WITH A DEADLY WEAPON, NAMELY A FIREARM." At trial,
appellant requested a lesser-included offense of assault stating that his "first reason
is that in order to get an aggravated assault you must first have an assault," and a
second reason "is that Officer Gonzales testified that when she first spoke to the
complainant that he didn't know what happened, he got hit or something, just a blow
to the head." The conduct underlying appellant's request for an instruction on
assault-that is, hitting the complainant in the head with an unknown object-is thus
different from the conduct alleged in the indictment-namely, shooting the
complainant with a deadly weapon. Because the conduct constituting the offense of
assault for which appellant wanted an instruction is not the same as the conduct
charged in the indictment for aggravated assault, assault by means of hitting the
victim is not a lesser-included offense of aggravated assault by shooting the victim
with a deadly weapon, namely a firearm. See Irving v. State, 176 S.W.3d 842, 845
(Tex. Crim. App. 2005). This offense fails to meet the requirements of article 37.09
because the same facts or less than the same facts required to prove the greater
aggravated assault charge are not required to prove the simple assault. Id. That is,
the State was not required to prove that appellant hit the complainant in the head in
order to prove that he committed aggravated assault by shooting the victim with a
deadly weapon. Assault by hitting the victim may be a lesser-included offense of
aggravated assault in some instances, but not as the greater offense was charged in
the indictment in this case. Thus, appellant's argument is not supported by the record.

 In appellant's alternative argument, he contends that "the evidence was
ambiguous on the precise nature of the weapon used." In his brief, appellant states
that he acknowledges the "general rule that the evidence must affirmatively raise the
lesser included offense and not simply negate an element of the higher offense, in
order for an instruction on the lesser included to be warranted." However, appellant
claims that an exception to that general rule applies here, by asserting that "where
certain evidence can be interpreted as either supporting or refuting an element of an
offense, a lesser included instruction would be warranted" and, as authority, he cites
to Schweinle. See Schweinle v. State, 915 S.W.2d 17, 19 (Tex. Crim. App. 1996).

 "[A] lesser included offense may be raised if evidence either affirmatively
refutes or negates an element establishing the greater offense or the evidence on the
issue is subject to two different interpretations, and one of the interpretations negates
or rebuts an element of the greater." Id. Here, no evidence affirmatively refutes or
negates that a firearm was used, nor does any interpretation of the evidence negate
or rebut that a firearm was used. See id. 

 We overrule appellant's fifth point of error. 

Confrontation Clause

 In his first point of error, appellant contends that his confrontation rights under
the Sixth Amendment to the United States Constitution were violated. Specifically,
appellant argues that, although the complainant testified at trial and was subject to
cross-examination, his out-of-court statements to Officer Gonzales should be
excluded under the Confrontation Clause because appellant did not confront the
statements when they were initially made at the scene. We disagree.

 In deciding the constitutional issue of whether the admission of a statement of
another violates a defendant's Sixth Amendment confrontation right, appellate courts
review the trial court's ruling de novo. See Lilly v. Virginia, 527 U.S. 116, 137, 119
S. Ct. 1887, 1900 (1999) (stating that courts should "independently review" whether
out-of-court statements violate the Confrontation Clause); Campos v. State, 186
S.W.3d 93, 96 (Tex. App.--Houston [1st Dist.] 2005, no pet.). 

 The Sixth Amendment's Confrontation Clause provides that "[i]n all criminal
prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses
against him." U.S. Const. amend. VI. This right applies to state as well as federal
criminal prosecutions. Pointer v. Texas, 380 U.S. 400, 406, 85 S. Ct. 1065, 1069
(1965). The primary protection afforded by the Confrontation Clause is the right to
cross-examine or to be provided with an adequate opportunity to cross-examine. 
Douglas v. Alabama, 380 U.S. 400, 403, 85 S. Ct. 1074, 1076 (1965). Out-of-court
testimonial statements of a witness are barred unless (1) the witness is unavailable to
testify and (2) the defendant had a prior opportunity to cross-examine the witness
regardless of whether such statements are deemed reliable by the court. Crawford v.
Washington, 541 U.S. 36, 68, 124 S. Ct. 1354, 1374 (2004). That is, "where
testimonial statements are at issue, the only indicum of reliability sufficient to satisfy
constitutional demands is the one the Constitution actually prescribes: confrontation." 
Id. at 69, 124 S. Ct. at 1374. When the declarant appears for cross-examination at
trial, however, the Confrontation Clause places no constraints on the use of his prior
testimonial statements. Id. at 59 n.9, 124 S. Ct. at 1369 n.9 (noting that "[t]he Clause
does not bar admission of a statement so long as the declarant is present at trial to
defend or explain it."); Campos, 186 S.W.3d at 97 (noting that trial court did not err
in admitting statements, regardless of whether they were testimonial, where the
declarant was available to testify at trial). The complainant is the declarant of the out-of-court statements that are at issue
here, and he underwent cross-examination when he testified at trial. We hold that
appellant's constitutional rights under the Sixth Amendment were not violated
because appellant's trial counsel, at trial, cross-examined the declarant of the out-of-court statements. 

 We overrule appellant's first point of error. 

Hearsay

 In his second point of error, appellant contends that the trial court erred in
admitting hearsay testimony. Specifically, appellant argues that trial court erred in
allowing Officer Gonzales to testify, under the excited-utterance exception to the
hearsay rule, to the details of the offense as related to her by the complainant. (4) We
disagree.

Standard of Review

 A trial court's decision to admit or to exclude hearsay will not be reversed
unless the trial court committed an abuse of discretion. Zuliani v. State, 97 S.W.3d
589, 595 (Tex. Crim. App. 2003). If a trial court's action falls within the zone of
reasonable disagreement, the reviewing court is bound to abide by the trial court's
decision. Salazar v. State, 38 S.W.3d 141, 153-54 (Tex. Crim. App. 2001).

Analysis

 An excited utterance, one of the exceptions to the hearsay-exclusionary rule,
is "[a] statement relating to a startling event or condition made while the declarant [is]
under the stress of excitement caused by the event of condition." Tex. R. Evid.
803(2). "The basis underlying the admission of this class of evidence is a
psychological one, namely, the fact that when a man is in the instant grip of violent
emotion, excitement or pain, he ordinarily loses the capacity for reflection necessary
to the fabrication of a falsehood . . . ." Evans v. State, 480 S.W.2d 387, 389 (Tex.
Crim. App. 1972). That is, "the statement is trustworthy because it represents an
event speaking through the person rather than the person speaking about the event." 
Zuliani, 97 S.W.3d at 595. Accordingly, "the critical determination is 'whether the
declarant was still dominated by the emotions, excitement, fear, or pain of the event'
or condition at the time of the statement." Id. at 596 (quoting McFarland v. State,
845 S.W.2d 824, 846 (Tex. Crim. App. 1992)). Factors that the court may consider
in making this determination include the length of time between the occurrence and
the statement and whether the statement was made in response to questioning. See
id. at 595-96. These factors, however, are not dispositive. Id.; Penry v. State, 903
S.W.2d 715, 750-51 (Tex. Crim. App. 1995); Lawton v. State, 913 S.W.2d 542, 553
(Tex. Crim. App. 1995).

 The trial court acted within its discretion in admitting the complainant's
statements to Officer Gonzales as excited utterances. When he made the statement
to Officer Gonzales, the complainant was "frantic and scared" and "pacing back and
forth," as well as being recently injured and bleeding from the ear and mouth. 
Although the record does not establish the exact length of time that elapsed between
the time of the incident and the time of the statements, the statements were made
before the complainant was transported by ambulance to the hospital and while he
was still at the scene of the incident. We conclude that the trial court did not abuse
its discretion by finding that the complainant was still dominated by the emotions of
his assault when he spoke with Officer Gonzales. Therefore, we hold that the trial
court did not err in admitting into evidence, as an excited utterance, the testimony of
Officer Gonzales regarding the details of the offense as related to her by the
complainant. 

 We overrule appellant's second point of error.

Conclusion

 We affirm the judgment of the trial court. 


 George C. Hanks, Jr.

 Justice


Panel consists of Justices Taft, Alcala, and Hanks.


Do not publish. Tex. R. App. P. 47.2(b).
1. The complainant testified that his necklace, made of platinum and diamonds, was purchased
for $9,500. The ring was a white gold wedding band, purchased as part of a set for $3,500. 
2. Officer Gonzales testified that it was the police department's policy to call the Homicide
Division when a patrol officer encountered a victim whom she believed might not survive
his injuries. 
3. The indictment specifically alleges that appellant "unlawfully, intentionally and knowingly
cause[d] bodily injury to JERRY JERNIGAN, hereinafter called the Complainant, by
SHOOTING THE COMPLAINANT WITH A DEADLY WEAPON, NAMELY A
FIREARM." 
4. The testimony objected to at trial was as follows: 


Q. All right. Now, during the time you're waiting for the ambulance, were
you able to ask him any information? 


A. Yes, ma'am.


. . . 


Q. Was he able to tell you what happened? 


A. Yes, ma'am. 


Q. What did he tell you? 


A. He stated that he was at home. There was a knock on the door and
when he looked it was a-I believe he said a cousin or cousin-in-law. 
So he said he recognized him so he opened the door and let him in. 


. . . 


Q. . . . After he told you that it was his cousin-in-law that came in, what
did he tell you happened next? 


 [Defense Counsel]: Your honor, object to the hearsay and right to
cross-examine.


 The Court: Sustained as to hearsay.


 [Prosecutor]: And, Judge, we would say that this is an excited
utterance exception to the Hearsay Rule and that
the officer described the complainant as frantic
and under the influence of the event that occurred. 



Following a bench conference, the trial court overruled defense counsel's objection and
allowed Officer Gonzales to continue her testimony. Defense counsel obtained a running
objection to all testimony thereafter concerning the details that the complainant told Officer
Gonzales about of the offense.