**Opinion filed August 30, 2013**



In The

# Eleventh Court of Appeals

_____

## Nos. 11-11-00294-CR, 11-11-00295-CR, & 11-11-00296-CR

_____

## MARSHALL WAYNE LEWINS, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 238th District Court**

**Midland County, Texas**

**Trial Court Cause Nos. CR37424, CR37425, & CR37426**

## M E M O R A N D U M   O P I N I O N

Marshall Wayne Lewins appeals from three convictions for the offense of aggravated robbery. In each case, the jury found Appellant guilty, found the enhancement allegations to be true, and assessed punishment at confinement for twenty-five years. The trial court sentenced Appellant accordingly and ordered that the sentences run concurrently. We affirm.

In his sole issue in each appeal, Appellant challenges the sufficiency of the evidence. Appellant argues that the evidence is legally and factually insufficient to establish that he was the person who committed the offenses or that a deadly weapon was used or exhibited.

We review a challenge to the sufficiency of the evidence, regardless of whether it is denominated as a legal or a factual sufficiency claim, under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we examine all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences from it, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). We defer to the jury as the sole judge of the witnesses' credibility and the weight to be given their testimony. *Winfrey v. State*, 393 S.W.3d 763, 768 (Tex. Crim. App. 2013); *Brooks*, 323 S.W.3d at 899 (citing *Jackson*, 443 U.S. at 319, 326); *see* TEX. CODE CRIM. PROC. ANN. art. 36.13 (West 2007), art. 38.04 (West 1979) (jury, as the trier of fact, is the sole judge of the credibility of the witnesses and of the weight to be given to their testimony).

The record shows that these cases were consolidated for trial. At trial, Detective Saul Bernal of the Midland Police Department testified that, in May 2010, he investigated a series of robberies that occurred in the same general vicinity during the early morning hours. The robberies at issue in these appeals occurred at the Knights Inn on May 2, at the IHOP on May 3, and at the Comfort Inn on May 4. The witnesses' descriptions of the suspect in these robberies matched. Surveillance videos from the security cameras at each of the three businesses were obtained and admitted into evidence. Appellant was a suspect in

2

Detective Bernal's investigation, and a photographic lineup containing his picture was shown to the complainants. One of the complainants tentatively identified Appellant, and two positively identified Appellant from the lineup. Appellant's fingerprints were not matched to any latent prints from the crime scenes, and no weapon was recovered.

Complainant Venita Vincent testified that she was working at the Knights Inn on May 2, 2010, when she "was robbed at gunpoint." The robber walked in the front door while Vincent was behind the counter. Vincent thought the robber was a customer and asked if she could help him. The robber stuck a gun in her face and said, "Yes, give me all of your money." Vincent put the cash drawer on the counter, and the robber took money from the drawer. At some point during the robbery, the robber threatened to shoot Vincent because he thought she had hit a silent alarm. Vincent was afraid because she "knew he could shoot [her]." Vincent identified Appellant in court as the person who robbed her. Vincent testified that she had no doubt about her identification of Appellant as the robber.

Joseph Traylor, who was a manager at the IHOP when it was robbed, testified that he and Melissa Arroyo were the only two employees in the IHOP at the time. Traylor testified that a black man walked in, put Arroyo in a headlock, and shoved a gun to her head. Traylor raised his hands, and the robber told Traylor to go to the office and open the safe. The robber dragged Arroyo, and they all went into the office. Traylor feared for his life and attempted to stall the robber; he told the robber that he did not know how to open the safe. Appellant said, "Open the safe or I'll kill you." Traylor looked at the robber's gun and observed that it was a "BB gun" that looked like a "1911 government model . . . square .45 automatic." Traylor continued, "If the hammer is back, I'm dead. If hammer's down, he hasn't cocked it yet, I got a chance." As Traylor was looking at the gun to see if he had a chance to get out of the situation alive, he noticed that the gun did

not have a hammer, that it had a fake receiver on it, and that the barrel had cut out edges with the word "Mattel" on it. Traylor said that he had a BB gun like that when he was a kid. Traylor testified that, when he realized the robber did not have a real gun, he said, "Shoot me." The robber let go of Arroyo and "swung at [Traylor] with the gun." Traylor grabbed the robber, threw him out the door, locked the door, and called the police.

Traylor testified that he made a "shaky" identification of someone from a photo lineup that he thought looked like the robber. Detective Kent Spencer testified that he showed the photo lineup to Traylor but that Traylor did not pick anybody from the photo lineup. Traylor testified that he was focused on the gun, not the robber.

Arroyo, the complainant in the IHOP robbery, testified that she was a waitress at the IHOP when it was robbed. Arroyo testified similarly to Traylor about what occurred during the robbery. She said that the robber grabbed her by the head, pulled out a gun, and told Traylor to open the safe. Arroyo said the gun "looked like a .45"; she thought the gun was black. Arroyo testified, "Everything happened so fast, I didn't realize [if] it was fake or real." She was nervous and was afraid that she might get shot or killed. Arroyo testified that she carefully studied a photo lineup that was shown to her and that she picked out the robber's picture from that lineup. She "had no doubt" in her mind that the person in the picture she chose—Appellant—was the robber. Arroyo also identified Appellant in court as the man who robbed the IHOP.

Jared Baumbach testified that he was working the graveyard shift at the Comfort Inn on May 4 when a man pulled a gun and asked for money. Baumbach grabbed the cash holder from the cash drawer and set it out, and the robber took the money out of it. Baumbach testified that he did not get a good look at the gun but that he "did notice that it was a real gun." The robber was concerned that

4

Baumbach was reaching for a button, "like an emergency button or something." Baumbach picked Appellant's photo from the photo lineup and also identified Appellant in open court as the person who committed the robbery.

Luetta Correll Wooden, with whom Appellant had children, testified as an alibi witness for Appellant. Wooden testified that Appellant was with her when the robberies occurred on May 3 and May 4. Wooden testified that, even though Appellant had been in jail since his arrest for these robberies, she had not informed the police or the district attorney of Appellant's alibi.

After reviewing the record and examining all of the evidence in the light most favorable to the verdict, we hold that a rational trier of fact could have found beyond a reasonable doubt that Appellant was the person who robbed each of the complainants: Vincent, Arroyo, and Baumbach. All three identified Appellant as the robber. A rational jury could have chosen to disbelieve the testimony of Wooden concerning Appellant's alibi.

Furthermore, there is evidence from which a rational jury could have found that Appellant used "a deadly weapon, to-wit: a firearm" as charged in the indictments. Although we agree that Traylor's testimony constituted evidence that Appellant did not use a firearm as alleged, we are not the factfinder, and the jury was free to disbelieve Traylor's testimony. We note that a BB gun is not a firearm or a per se deadly weapon (though it can be a deadly weapon[1]). *See* TEX. PENAL CODE ANN. § 46.01(3) (West Supp. 2012); *O'Briant v. State*, 556 S.W.2d 333, 336 (Tex. Crim. App. 1977). However, no gun was recovered in these cases, and the testimony of Vincent, Arroyo, and Baumbach, in addition to the circumstances in which the gun was used, constitutes sufficient evidence from which a jury could have determined beyond a reasonable doubt that Appellant used a firearm during

---

[1]*See Adame v. State*, 69 S.W.3d 581 (Tex. Crim. App. 2002).

5

the commission of the offenses. Even when no gun is recovered or admitted into evidence at trial, a jury may make a "reasonable inference, from the victim's testimony" and from the context of the crime, that the "gun" used during the commission of the crime "was, in fact, a firearm." *Cruz v. State*, 238 S.W.3d 381, 388 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd); *see Wright v. State*, 591 S.W.2d 458 (Tex. Crim. App. 1979); *Lewis v. State*, No. 10-09-00308-CR, 2012 WL 28707, at *5 (Tex. App.—Waco Jan. 4, 2012, pet. ref'd) (mem. op., not designated for publication); *Davis v. State*, 180 S.W.3d 277, 286 (Tex. App.—Texarkana 2005, no pet.); *Benavides v. State*, 763 S.W.2d 587, 588–89 (Tex. App.—Corpus Christi 1988, pet. ref'd). The act of threatening the victim with a gun also suggests that the gun is a firearm instead of a gun of the nonlethal variety. *Lewis*, 2012 WL 28707, at *5. During the robberies involved here, Appellant wielded a gun and threatened the victims as if the gun was a firearm, and there was also evidence indicating that Appellant used a "real gun." A rational jury could have chosen to disbelieve the testimony of Traylor concerning the gun or find that that testimony was not credible.[2] Appellant's sole issue in each appeal is overruled.

---

[2]We note that, even if we were to hold that the evidence was insufficient to show that Appellant used a firearm during the IHOP robbery, the evidence was sufficient to show that Appellant used a firearm during the commission of the other two aggravated robberies and that Appellant committed the lesser included offense of robbery of Arroyo at the IHOP, a second-degree felony. *See* TEX. PENAL CODE ANN. § 29.02 (West 2011). In that situation, we would modify the judgment in the IHOP case to show a conviction for the lesser included offense of robbery. *See Bowen v. State*, 374 S.W.3d 427, 432 (Tex. Crim. App. 2012); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993). However, we would not reverse Appellant's conviction or remand for a new punishment hearing. The record shows that Appellant was convicted as a habitual offender, that Appellant's sentences are to run concurrently, and that Appellant received the minimum punishment available for a conviction of the lesser included offense of robbery because his punishment would still have been enhanced due to him being a habitual offender. *See* PENAL § 12.42(d); *Mathes v. State*, No. 14-93-00311-CR, 1995 WL 529144, at *2 (Tex. App.—Houston [14th Dist.] Sept. 7, 1995, no pet.) (not designated for publication).

We affirm the judgments of the trial court.

JIM R. WRIGHT

CHIEF JUSTICE

August 30, 2013

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Willson, J.