Selwynn Barry GHOLSON, Appellant,

v.

The STATE of Texas, Appellee.

Larry Joe ROSS, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 51920 and 51921.

Court of Criminal Appeals of Texas.

Oct. 20, 1976.

Gerald M. Brown, Temple, James H. Kreimeyer, Belton, for appellant.

Joe Carroll, Dist. Atty., Bob D. Odom, Troy C. Hurley, Asst. Dist. Attys., Belton, Jim D. Vollers, State's Atty., and David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

DAVIS, Commissioner.

Appeals are taken from convictions for capital murder. Appellants were tried in a joint trial following a change of venue from Bell County. Each appellant's punishment was set at death.

On September 14, 1974, appellants Selwynn Barry Gholson and Larry Joe Ross entered the Walburg State Bank in Walburg. They ordered the bank's vice-president, an employee, and a customer to lie down on the floor at gunpoint. About $3,000 was then taken. Before they left the bank, one of the two men shot each of the three victims in the head. All three survived and testified against the appellants at trial.

The bank's vice-president was able to call the Williamson County Sheriff's Office and give a rough description of the holdup men. Walter Ferguson told the Sheriff's Department that he had seen the two men leave in a blue General Motors automobile. These descriptions were put out by radio to all Central Texas law enforcement units.

At approximately the same time as the robbery, off-duty Highway Patrolman Hollie Tull left his residence in a radio-equipped marked black and white highway patrol car. The Temple police dispatcher put out the description of the holdup men and received a radio transmission from Tull, which resulted in the dispatcher checking on license number BRT209. The dispatcher conversed with Tull four times and lost contact. Tull was subsequently found by his car shot to death, with six pistol wounds and a shotgun wound to the head.

The abandoned getaway car with license number BRT209, a blue Chevrolet, was found not far away. It was registered to appellant Ross' father. A number of items linking appellants to the getaway car and to the scene of the murder were found. Two witnesses observed a fight between Tull and two black men, and the subsequent shooting at Tull's car.

Appellant Gholson was captured in a field near Temple. Appellant Ross was arrested at his father's home in Granger a week later. The murder of Tull is the gravamen of this prosecution.

■ Appellants urge that Art. 37.071, V.A.C.C.P. is unconstitutional (1) "in that imposition of the death penalty is a cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution," (2) "in that its special issue procedure allows arbitrary and capricious imposition of the death penalty in violation of the due process clause of the Fourteenth

Amendment to the United States Constitution," and (3) that Art. 37.071, supra, is "unconstitutionally vague in violation of the due process clause of the Fourteenth Amendment. . . ."

Appellants' contention relative to the statute being violative of the Eighth Amendment was answered adversely to them in *Jurek v. Texas*, —— U.S. ——, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976). See also *Gregg v. Georgia*, —— U.S. ——, 96 S.Ct. 2909, 49 L.Ed.2d 859.

Appellants' claim that the special issue procedure set forth in Art. 37.071, supra, allows arbitrary and capricious imposition of the death penalty was likewise rejected by the United States Supreme Court in *Jurek v. Texas*, supra. See also *Jurek v. State*, Tex.Cr.App., 522 S.W.2d 934.

The contention of vagueness is directed to the second question asked the jury in accordance with Art. 37.071(b)(2), supra, "whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society." This argument was rejected by this Court in *Jurek v. State*, supra, and ultimately by the United States Supreme Court in *Jurek v. Texas*, supra. See also *Livingston v. State*, 542 S.W.2d 655 (Tex.Cr.App.1976).

█ Appellants contend that the trial court erred in admitting a notebook containing highly inflammatory writings over appellants' objections for the reason it was not shown to have been made by appellants and for the further reason that the prejudicial nature of the notebook far outweighed its probative value.

Fingerprints of both appellants, along with unidentified prints, were found on the book. Inside the front cover appears "AUG. 74 BRO. J. ROSS."

The notebook was recovered from the abandoned blue Chevrolet bearing license number BRT209, determined to have been registered to appellant Ross' father.

Nine sheets in the notebook contain handprinted statements. A few of the recitations are, "the streets run red with whitey's blood," "shoot whitey in the head until he is dead," and "this is how I fell (sic) about the dog ass white honky fag ass punk type low life bastard devil swine shit ass white trash no good mother fucking white people. Kill white babys (sic) too all must die." The latter statement was at the bottom of the first page beside "(The Black Assassins)," "(By Brother Orun Rashann Allah)." On still another page there appears:

"Thirteen stars on the origanal flag
"Thirteen devils from the demon's bag
"Thirteen berries and thirteen leaves .
"Thirten colonyies of land grabing theives .
"And thers thirteen airrows in the eagels claw 67 corparations that wage the devil's war
   "Who's Doing It For Us
   "My People The Time Is Now!
      "Ourun Rashann Allah"

Recitations relative to the "white devil" and the supremacy of the black man appear on other pages.

At the guilt stage of the trial, the notebook was admitted only for the purpose of showing that a book was found in the car in question bearing both appellants' fingerprints. The court ordered that it not be shown to the jury. At the punishment stage of the trial the contents were admitted into evidence over appellants' objections.

Pursuant to Art. 37.071(b)(1), (2), supra, the court submitted questions to the jury inquiring if they found from the evidence beyond a reasonable doubt (1) that the conduct of the appellants which caused the death of the deceased was committed deliberately and with the reasonable expectation that the death of the deceased or another would result; and (2) that there is a probability that the appellants would commit criminal acts of violence that would constitute a continuing threat to society.

Article 37.071(a), supra, provides in pertinent part that, "In the proceeding, evidence may be presented as to any matter that the court deems relevant to sentence. This subsection shall not be construed to autho-

rize the introduction of any evidence secured in violation of the Constitution of the United States or of the State of Texas." See *Moore v. State,* 542 S.W.2d 664 (Tex. Cr.App.1976).

In *Jurek v. Texas,* supra, the United States Supreme Court in discussing the questions asked the jury at the punishment stage of the trial under 37.071(a), supra, stated:

"What is essential is that the jury have before it all possible relevant information about the individual defendant whose fate it must determine."

We find appellants' reliance on *Arnott v. State,* Tex.Cr.App., 498 S.W.2d 166, to be misplaced. In *Arnott,* this Court held that a notebook containing what appeared to be records of narcotic transactions was improperly admitted at the guilt stage of the trial where the defendant was being tried for possession of heroin. This Court reasoned that the only inference to be drawn from the admission of the notebook was that appellant was dealing in narcotics and, finding no link between the notebook and the defendant, this Court concluded that the admission of same constituted reversible error. While a number of distinctions are readily discernible in the instant case and *Arnott,* we first observe that the notebook in the instant case was tied to appellants by their fingerprints.

The notebook in the instant case does not purport to be a personal communication by or to either of appellants. If the statements can be attributed to any person, it would appear that it would be "Ourun Rashann Allah."

■ An extra-judicial statement or writing may be admitted as circumstantial evidence from which an inference may be drawn, and not for the truth of the matter stated therein, without violating the hearsay rule. *Arnott v. State,* supra; *Phenix v. State,* Tex.Cr.App., 488 S.W.2d 759; McCormick & Ray, Texas Law of Evidence, Sec. 781.

The complained-of exhibit recited intense statements of hatred toward the white race and advocated acts of violence toward the white man. The evidence reflected that the notebook had been in possession of appellants. Clearly, the evidence was not offered for the truth of the statements recited in the book. Art. 37.071, supra, provides, ". . . evidence may be presented as to any matter that the court deems relevant . . ." not secured "in violation of the Constitution of the United States or of the State of Texas." In *Livingston v. State,* supra, it was noted that "such provision gives the court wide discretion in the evidence that may be offered." We conclude that the court was not in error in deeming the exhibit to be relevant since we find that it was pertinent to the second question asked under Art. 37.071, supra, "(2) whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society."

■ Appellants contend that the court "erred in overruling appellants' motion for mistrial following the State's argument stating 'God bless those officers who died in the line of duty like him, and their families.'"

The record reflects that the following occurred during the prosecutor's argument:

"God bless Hollie Tull and his family. God bless those officers who died in the line of duty like him and their families.

"MR. KREIMEYER [defense counsel]: Your Honor, we are going to object to the other officers dying in the line of duty.

"THE COURT: Sustained.

"MR. KREIMEYER: We will ask that the jury be instructed to disregard it.

"THE COURT: The jury will please disregard anything about anything other than this particular case and specifically about other officers.

"MR. KREIMEYER: We move for a mistrial at this time.

"THE COURT: Overruled.

"MR. GREEN [prosecutor]: I will withdraw the argument, your honor. I will argue this case. God bless Hollie Tull and his family."

In support of their contention that the court erred in overruling their motion for mistrial, appellants urge that there is little to distinguish the argument herein from that made by the prosecutor in *Lopez v. State,* Tex.Cr.App., 500 S.W.2d 844. In *Lopez,* the prosecutor argued, "I'm concerned about the open season that is coming on police officers. I believe the same week these officers were killed there were eleven killed in America." In *Lopez,* this Court held that the court's instruction to disregard did not overcome the prejudice and harm caused by the foregoing, coupled with another argument of the prosecutor that the defendants and their lawyers lied when they entered pleas of not guilty.

In *Lopez,* the prosecutor argued as a fact, unsupported by the record, that eleven officers were killed the same week. In the instant case, the argument generally refers to the fact that officers have been killed in the line of duty and asks God's blessing upon them and their families. It is not a plea to punish these appellants to stop a wave of killing of police officers or to impose punishment for other similar crimes.

█ Normally, an instruction to disregard will be sufficient to remove the error in argument. *Curtis v. State,* Tex.Cr.App., 519 S.W.2d 883; *Overton v. State,* Tex.Cr.App., 490 S.W.2d 556. We find that the court's instruction in the instant case was sufficient to remove error in the prosecutor's general statement about other officers having been killed.

█ Appellants contend that the court erred in not granting their motion for mistrial when the prosecutor argued:

"I don't recall when the last person was electrocuted. I do know this that since the last person was there has been a hundred percent increase in crime."

The record reflects that appellants' objection to the argument as not being supported by the record was sustained and pursuant to their request the jury was instructed to disregard.

The State responds by urging that the complained-of argument was in response to an argument by appellants that the death penalty was not a deterrent in that the members of the jury as concerned citizens who read newspapers and magazines probably did not know what crimes carried the death penalty before this case began and that people who committed crimes were less knowledgeable.

The State cites *Cunningham v. State,* Tex.Cr.App., 484 S.W.2d 906, for the proposition that an argument that crime was on the increase in the county is not an improper argument. The instant argument goes beyond an assertion that crime is on the increase.

*White v. State,* Tex.Cr.App., 492 S.W.2d 488, cited by appellants, is distinguishable. In *White,* this Court reversed where the prosecutor argued that sixty percent of crime in Dallas County could be attributed to narcotics. Unlike the instant case, the defendant's objection to the argument was overruled and no instruction was given to disregard.

We find that the prosecutor exceeded the scope of proper response in replying to appellants' argument; however, we cannot characterize such error as being so harmful as to require reversal in light of the court's prompt action in sustaining the objection and instructing the jury to disregard. See *Haywood v. State,* Tex.Cr.App., 482 S.W.2d 855; *Alexander v. State,* Tex.Cr.App., 479 S.W.2d 44; *Hughes v. State,* Tex.Cr.App., 493 S.W.2d 166; *Lucas v. State,* Tex.Cr.App., 482 S.W.2d 236; *Linzy v. State,* Tex.Cr.App., 478 S.W.2d 950.

█ Appellants contend that the court erred in admitting over their objections the results of psychiatric examinations and opinions by Dr. John Holbrook that appellants were sociopaths who would continue to be a danger to society when such examination was made in the absence and without the knowledge of counsel.

Appellants' position appears to be that an accused may not be deprived of counsel where counsel's absence might derogate from the accused's right to a fair trial, thereby resulting in denial of Sixth Amendment rights.

Dr. Holbrook, on voir dire examination by appellants, testified that he interviewed appellants in jail at the instance of the prosecution. Counsel for appellants were not advised of the interviews, nor were they present during them. Purposes listed for the interviews were to determine appellants' sanity at the time of the offense and their competency to stand trial, and partly to do a "psychiatric evaluation."

Dr. Holbrook's testimony, offered by the State at the punishment stage of the trial, was that appellants were sociopaths and were likely to commit criminal acts of violence in the future.

In *Stultz v. State,* Tex.Cr.App., 500 S.W.2d 853, this Court said:

"A psychiatric examination is not an adversary proceeding. Its purpose is not to aid in the establishment of facts showing that an accused committed certain acts constituting a crime; rather, its sole purpose is to enable an expert to form an opinion as to an accused's mental capacity to form a criminal intent.

Because of the intimate, personal and highly subjective nature of a psychiatric examination, the presence of a third party in a legal and non-medical capacity would severely limit the efficacy of the examination."

Appellants argue that the instant case is distinguishable from *Stultz* because insanity at the time of the offense was not raised, nor was lack of competency to stand trial urged.

In *Armstrong v. State,* Tex.Cr.App., 502 S.W.2d 731, the defendant offered testimony at the punishment stage of the trial that he was capable of being rehabilitated. In rebuttal, the State presented the testimony of a psychiatrist that defendant was a sociopath and could not be rehabilitated. The interview upon which the psychiatrist relied for his conclusion was conducted without the presence of counsel or defendant having been advised of his right to counsel. As in the instant case, the defendant had not raised the defense of insanity. Relying on *Stultz v. State,* supra, and *Blankenship v.*

*State,* Tex.Cr.App., 432 S.W.2d 945, this Court held such testimony to be admissible.

Thus, in *Armstrong,* testimony very similar to that in the instant case was held admissible for rebuttal purposes even though such testimony was obtained as the result of an interview without the presence of counsel, and where defendant had not raised the defense of insanity. We perceive no reason why higher constitutional standards should be imposed for admission of such testimony when the State is presenting its case-in-chief than is required for rebuttal testimony.

In *United States v. Cohen,* 530 F.2d 43 (5th Cir. 1976), it was stated,

". . . we reject appellant's claim of a constitutional right to have an attorney present at the psychiatric examination since that might defeat the purpose of the examination and since the examination is not the kind of critical stage at which assistance of counsel is needed or even useful. There would be no need for counsel to instruct the accused not to answer questions for fear of factual self-incrimination, for any such matter is subject to suppression; and interference with the examination by counsel on other grounds would be improper."

In the instant case, it is not contended that the doctor testified to any incriminating statements made by appellants to him during the course of the interviews in violation of Art. 46.02, § 2(f)(4), V.A.C.C.P.

We conclude that appellants' Sixth Amendment rights were not violated by the court permitting Dr. Holbrook to testify to conclusions drawn from examination of appellants made without the presence of counsel.

■ Appellant Gholson contends that the court erred in allowing over his objection Dr. James Grigson to testify as to his opinion based upon a psychiatric examination conducted on appellant when Dr. Grigson had been appointed by the court only to determine appellant's competency to stand trial.

The record reflects that the court appointed Dr. Grigson to make an examination of appellant after a hearing on the State's motion on November 5, 1974. (Trial was in January and February, 1975.) Dr. Grigson's conclusions were essentially the same voiced by Dr. Holbrook. We find our disposition of the last ground of error and our opinion in *Livingston v. State,* supra, to be dispositive of appellant's contention.

Appellant Gholson contends that the court erred in submitting the offense of capital murder in its charge over his objection at the guilt stage of the trial in that the State had failed to prove that the deceased had probable cause to arrest appellant and therefore deceased was not acting in the lawful discharge of his duties as a peace officer.

The pertinent portion of the indictment alleged that appellant,

". . . did then and there knowingly and intentionally cause the death of Hollie Tull, hereafter called deceased, by shooting him with a gun, and that the said deceased was a peace officer acting in the lawful discharge of an official duty and that the said Selwynn Barry Gholson then and there knew the deceased was a peace officer. . . ."

V.T.C.A. Penal Code, Sec. 19.03(a)(1), "Capital Murder," provides,

"(a) A person commits an offense if he commits murder as defined under Section 19.02(a)(1) of this code and:

(1) the person murders a peace officer or fireman who is acting in the lawful discharge of an official duty and who the person knows is a peace officer or fireman; . . .."

James Raabe, a Temple police officer, testified that on the day in question he was working as radio dispatcher and that he had received reports of the robbery which had occurred at the Walburg bank. In turn, Raabe transmitted such information over the Temple police radio which reflected that the suspects were two black men dressed in army fatigues and driving a blue General Motors car. Raabe then received a message over the radio which he recognized as coming from patrolman Tull and as a result of the call he checked license number BRT209. Raabe received four radio messages from Tull and in response to these communications he dispatched a Temple police unit to assist Tull.

A brief stop of a suspicious person in order to determine his identity or to maintain status quo momentarily while obtaining more information may be reasonable in light of facts known to the officer at the time. *Adams v. Williams,* 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612; *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889; *Balli v. State,* Tex.Cr.App., 530 S.W.2d 123; *Hazel v. State,* 534 S.W.2d 698; *Wood v. State,* Tex.Cr.App., 515 S.W.2d 300.

In light of the information relayed to Tull on the police radio, the officer was justified in stopping the appellants' vehicle. The record does not reflect that Tull had done anything more than stop appellants for the purpose of investigating "possible criminal behavior" since the record is devoid of any evidence that the officer attempted to arrest appellants. See *Terry v. Ohio,* supra. In light of the foregoing, we find it unnecessary to reach the question of whether probable cause existed for arrest. We reject appellant's contention that the evidence fails to reflect that the deceased officer was acting in the lawful discharge of his duties as a peace officer.

Appellant Ross contends that the court erred in admitting testimony of certain reputation witnesses.

A total of ten witnesses testified at the punishment stage of the trial that appellant Ross' reputation as a peaceful and law-abiding citizen was bad. On appeal, he argues that the admission of the testimony of four of them constitutes reversible error.

As to all four, appellant argues that it was reversible error for the trial judge to refuse his request to voir dire these witnesses out of the presence of the jury. The trial judge granted permission to voir dire the witnesses before they testified in the jury's presence, but appellant declined to

voir dire the witnesses before the jury and relied on cross-examination to test their qualifications.

■ The trial judge should have granted appellant's request for voir dire of the reputation witnesses outside the jury's presence. See *Curtis v. State,* Tex.Cr.App., 519 S.W.2d 883; *Gleffe v. State,* Tex.Cr.App., 501 S.W.2d 672; *Crawford v. State,* Tex.Cr. App., 480 S.W.2d 724. However, such error is harmless where the witnesses are not shown to have been disqualified to testify. *Curtis v. State,* supra; *Gleffe v. State,* supra; *Crawford v. State,* supra.

After Wayne Schroeder testified that he was familiar with the reputation of Ross in the community in which he lives for being a peaceful and law-abiding citizen, he stated in response to the prosecutor's question that his reputation was bad.

On cross and re-cross examination, the witness stated that he had not discussed anything "anyone else in the public hasn't discussed since this had all come about." In response to further questioning by appellant, Schroeder testified that he formed his opinion as the result of an incident that occurred "some year or so ago." On re-direct, Schroeder testified that he had talked to people about Ross as well as having observed him.

After Mrs. Raymond Rister testified on direct that appellant's reputation was bad, she stated on cross-examination that she was basing her opinion on personal experience. On re-direct, Mrs. Rister testified that she had discussed appellant's reputation with other people in the community and that her opinion was based on both personal observations and "on discussion of his reputation with other people." On re-cross, Mrs. Rister testified that she had rather testify from personal experience, "I wouldn't want to testify on hearsay," and concluded that her opinion had been formed on personal experience.

Mrs. R. T. Holubec, after stating on cross-examination that her opinion was based on personal observation, testified on re-direct examination that she had heard other people discuss the reputation of appellant and, based upon that, appellant's reputation was bad. On re-cross, Mrs. Holubec stated that she formed her opinion based on her own personal observations.

Wesley Duncan, the last of the four witnesses whose reputation testimony appellant attacks, testified that he was familiar with appellant's reputation in the community, and it was bad. On cross-examination, the witness stated that he formed his opinion by seeing appellant in the community, " . . . I would say most of it would be drawing from other people. In other words how they treated him." The witness further stated, " . . . not just my personal but a general feeling," the way Duncan and appellant treated each other, and "the way students treated him" formed the basis for the opinion.

■ Undoubtedly, the witnesses were confused by counsel for appellant and the State phrasing questions as to how the witnesses' "opinions" of Ross were formed. After having determined that the witness knew the reputation of appellant in the community, the proper question then is, "What is that reputation?" and not an inquiry relative to the opinion of the witness.

All of the challenged witnesses except Duncan testified that they had heard appellant's reputation discussed in the community, and Duncan testified in terms of the "general feeling" toward appellant. The testimony of Mrs. Holubec was withdrawn from the consideration of the jury by the court.

In *Lewis v. State,* Tex.Cr.App., 503 S.W.2d 806, the witness testified that he knew the defendant's reputation for being a peaceful and law-abiding citizen and it was bad. On cross-examination, the witness was asked if he were testifying from his personal knowledge and he responded, "Well, my personal knowledge and what I hear, what the *general feeling* is." (Emphasis supplied) The Court held the witness was qualified.

While all of the challenged witnesses in the instant case appear to have vacillated

from basing their "opinion" upon what they had heard discussed and the "general feeling" to a matter of "opinion" based on personal knowledge, we cannot conclude that the witnesses were shown to have been disqualified. Further, the testimony that appellant's reputation in the community was bad was overwhelming and uncontroverted. Error, if any, in the admission of the complained-of testimony was not so harmful as to require reversal.

The judgments are affirmed.

Opinion approved by the Court.

ROBERTS, J., concurs in the results.