**F I L E D**
IN THE 13TH COURT OF APPEALS
CORPUS CHRISTI

05/11/15

**DORIAN E. RAMIREZ, CLERK**

**BY** cholloway

ACCEPTED
13-14-00038-CR
THIRTEENTH COURT OF APPEALS
CORPUS CHRISTI, TEXAS
5/11/2015 12:00:00 AM
DORIAN RAMIREZ
CLERK

Case No. 13-14-00038-CR

IN THE THIRTEENTH COURT OF APPEALS
OF TEXAS
AT CORPUS CHRISTI, TEXAS

RECEIVED IN
13th COURT OF APPEALS
CORPUS CHRISTI/EDINBURG, TEXAS
5/11/2015 8:00:00 AM
DORIAN E. RAMIREZ
Clerk

_____

**ALLAN LATOI STORY**
**Appellant**

**v.**

**STATE OF TEXAS**
**Appellee**

_____

Appeal from the 19th Judicial District Court
of McLennan County, Texas
Trial Court Cause Number 2011-2499-C1

_____

## APPELLANT'S AMENDED BRIEF
_____

**Attorney for Appellant:**
Doyle L. Young
Law Office of Doyle L. Young, P.C.
P.O. Box 2174
Waco, TX 76703
Telephone: (254) 855-1108
Fax: (800) 620-7961

**Attorney for Appellee:**
Abel Reyna
Criminal District Attorney
219 N. 6th Street, Suite 200
Waco, TX 76701
Telephone: (254) 757-5084
Fax: (254) 757-5021

**ORAL ARGUMENT NOT REQUESTED**

# NAMES OF ALL PARTIES AND COUNSEL

Appellant:                                            Allan Latoi Story
Beto Unit - TDCJ
1391 FM 3328
Tennessee Colony, TX 75880

Appellant's Appellate Counsel:      Doyle L. Young
Law Office of Doyle L. Young, P.C.
P.O. Box 2174
Waco, TX 76703

Appellant's Trial Counsel:           Samuel Martinez
1105 Wooded Acres, Suite 200
Waco, TX 76710

Appellee:                                           State of Texas

Appellee's Appellate Counsel:       Abel Reyna
Criminal District Attorney
219 N. 6th Street, Suite 200
Waco, TX 76701

Appellee's Trial Counsel:             J.R. Vicha
Chris Bullajian
219 N. 6th Street, Suite 200
Waco, TX 76701

Trial Judge:                                   The Honorable Ralph Strother
19th District Court
501 Washington Avenue
Waco, TX 76701

# TABLE OF CONTENTS

Names of All Parties and Counsel ………………………………………………. 1

Index of Authorities ……………………………………………………….. 3

Statement of the Case …………………………………………………… 4

Issues Presented …………………………………………………. 5

Statement of Facts ……………………………………………… 5

Summary of the Argument ……………………………………….. 8

Argument ………………………………………………………. 8

    I.    <u>Reversible error did occur when the trial court refused to admit into evidence the taped recording of a police officer's interview of Story made 3-4 hours after the stabbing because the contents of the recording were relevant and were not hearsay</u> ……………………… 8

    II.    <u>Reversible error did occur when the trial court refused to give a charge instruction regarding self-defense</u>…………………………… 20

Prayer ……………………………………………………………... 29

Certificate of Service ………………………………………………... 30

Certificate of Compliance …………………………………………… 31

# INDEX OF AUTHORITIES

**CASES**

*Abdnor v. State*, 871 S.W.2d 726, 731-732 (Tex. Crim. App. 1994) ………….. 21

*Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) ……………... 29

*Alonzo v. State*, 353 S.W.3d 778, 781 (Tex. Crim. App. 2011) ……………….. 22

*Bufkin v. State*, 201 S.W.3d 779, 782 (Tex. Crim. App. 2006) ……………. 21, 27

*Cornet v. State*, 417 S.W.3d 446, 451 (Tex. Crim. App. 2013) ……………….. 29

*Dinkins v. State*, 894 S.W.2d 330 (Tex. Crim. App. 1995) …………………….. 16

*Ferrel v. State*, 55 S.W.3d 586, 591 (Tex. Crim. App. 2001) …………………  21

*Granger v. State*, 3 S.W.3d 36, 38 (Tex. Crim. App. 1998) ……………….. 21-22

*Jones v. State*, 843 S.W.2d 487, 499 (Tex. Crim. App. 1992) …………………. 18

*Shaw v. State*, 243 S.W.3d 647, 657 (Tex. Crim. App. 2007) ………… 22, 26, 27


**STATUTES AND RULES**

TEX. PENAL CODE §9.32(a) ………………………………………………… 21, 25

TEX. R. EVID. 401………………………………………………………………. 13

TEX. R. EVID. 801(d) …………………………………………………………16

## STATEMENT OF THE CASE

Appellant Story was indicted in a one-count indictment by the Grand Jury of McLennan County, Texas, on December 9, 2011. (I C.R. at 7-8). The indictment charged him with Murder in violation of Texas Penal Code §19.02, a felony of the First Degree.

On December 10, 2013, a jury was sworn (II R.R. at 146). On December 10 and 11, 2013, the jury heard evidence regarding guilt/innocence (III R.R. at 14-109; IV R.R. at 6-136). On December 11, 2013, the jury was charged regarding guilt/innocence. (I C.R. at 123-130; IV R.R. at 136-144). On the same date, i.e. December 11, 2013, the jury returned a verdict finding Story guilty. (I C.R. at 123-1300; IV R.R. at 162-163). On December 11 and 12, 2013, the jury heard punishment evidence (V R.R. at 4-6; VI R.R. at 5-37). On December 12, 2013, the jury was charged regarding punishment (I C.R. at 134-144 ; VI R.R. at 37-48), and assessed Story's punishment to be a term of Life (I C.R. at 142; VI R.R. at 63-64 ). The trial judge signed and filed a Judgment of Conviction by Jury on the same date. (I C.R. at 146-148). The trial judge on the same date (i.e. December 12, 2013) certified that Story had the right to appeal his conviction. (I C.R. at 149). Story's trial attorney timely filed Story's Notice of Appeal on December 18, 2013. (I C.R. at 151-152).

4

## ISSUES PRESENTED

I.    Whether the trial court erred in excluding from evidence an audio recording of an interview of Story by a police officer that was made 3-4 hours after the stabbing of the victim.

II.   Whether the trial court erred in refusing to give a charge instruction regarding self-defense.

## STATEMENT OF FACTS

The jury found Story guilty of the murder of Zachary Davis and sentenced him to a term of Life.

Joyce Akers testified that she witnessed a fight on the back porch of an apartment that involved Appellant Story, Story's girlfriend Rene Davis, and Renee Davis' brother Zachary Davis (III R.R. at 34-58). She testified that Story and Rene Davis had a heated argument and that Zachary Davis warned Story not to harm his (Zachary Davis') sister Rene. Akers testified that Story responded that, if Zachary Davis intervened, Story would kill him. (III R.R. at 35). Akers testified that Story left the apartment by the back door and went out onto the back porch and that Rene Davis followed him out and that she continued the argument. Zachary Davis followed them out to the porch, where Story grabbed Rene Davis by the throat and then released her. (III R.R. at 36-37). Akers testified that Zachary Davis then attacked Story, who fell backward. Zachary Davis and Rene then began to hit Story as he lay on the ground. (III R.R. at 37-38; 47). During this fight, Akers

5

said, no participant had a weapon but used only their fists. (III R.R. at 40-42; 48). Akers testified that the participants in this fight then separated and the fight was over. She said that Story walked back toward the back door of the apartment and Zachary Davis stepped off the apartment's back porch and walked into the yard. Akers testified that a knife fell from Story's person, that he picked it up, that he approached Zachary Davis with the knife, that somehow Zachary Davis fell onto his back, and Story was on top of Zachary Davis and stabbed him several times, possibly four or five times. (III R.R. at 38-39; 49-50). Akers testified that Story then went into the apartment and locked the door; Zachary Davis got up and ran away. (III R.R. at 40).

Waco Police Officer Jason Ireland testified about the search for Story that continued for 3-4 hours after the fight between Story and Zachary Davis. (III R.R. at 65-66). When Story was located in a house, Ireland testified that Story was uncooperative about exiting the house but that he finally did exit after a warning from a canine handler that the dog was about to be released into the house. (III R.R. at 66-67) On cross-examination, Officer Ireland said that Story was fairly compliant in being arrested. (III R.R. at 82-84). After Story was apprehended, Ireland placed him in his police car and conducted an interview that lasted approximately 17 minutes and was recorded. (III R.R. at 67; 71-73).

6

Waco Police Department Crime Scene Technician Angelika McAllister testified regarding her taking of photographs and gathering evidence at the crime scene. (III R.R. at 87-108). She testified that she saw no signs of injury to Rene Davis' throat or anywhere else on her body. (III R.R. at 105-106). She did observe some injuries to Story's body. (III R.R. at 106-107).

Forensic pathologist Janice Townsend-Parchman testified that the cause of Zachary Davis' death was three stab wounds. (IV R.R. at 24).

Rene Davis, the girlfriend of Story and the sister of Zachary Davis, testified that she was a witness to and participant in the fight involving Story and Zachary Davis. (IV R.R. at 29-67). She testified that Story did not choke her or make any physical contact with her before Zachary Davis hit Story; she said that Story probably would have choked her if Zachary had not defended her by hitting Story first. (IV R.R. at 32-33; 54-55; 58). In the fight that ensued, Story was on the ground on the back porch while Zachary Davis and Rene Davis were hitting him, Rene Davis using a stick whose width was that of her wrist. (IV R.R. at 34-35; 52). She testified that she went into the house, got a hammer, came back outside, and hit, or at least attempted to hit, Story with the hammer. (IV. R.R. at 36). She then saw her brother bleeding and the fight stopped. On cross-examination she testified that she did not tell the police on the night of the fight about the stick and hammer because she was scared. (IV R.R. at 46). She further testified that she got

7

the hammer after Zachary Davis was stabbed, not before. (IV R.R. at 56-57).

Rene Davis testified that Zachary Davis never had a weapon and he had been stabbed before she got the hammer. (IV R.R. at 61-62).

Defense investigator Edward McElyea testified about recovering the hammer from Rene Davis. (IV R.R. at 67-73).

Steve January, who was the Waco Police Detective who initiated the investigation into the murder of Zachary Davis, testified about his investigation (IV R.R. at 85-91).

Appellant Story did not testify.

## SUMMARY OF THE ARGUMENT

I. **Reversible error did occur when the trial court refused to admit into evidence the taped recording of a police officer's interview of Story made 3-4 hours after the stabbing because the contents of the recording were relevant and were not hearsay.**

II. **Reversible error did occur when the trial court refused to give a charge instruction regarding self-defense.**

## ARGUMENT

III. **Reversible error did occur when the trial court refused to admit into evidence the taped recording of a police officer's interview of Story made 3-4 hours after the stabbing because the contents of the recording were relevant and were not hearsay.**

A. **The testimonial background**

8

Waco Police Department officer Jason Ireland testified that, 3-4 hours after the stabbing of Zachary Davis, Story was apprehended and he placed Story in his patrol car. (III R.R. at 65-67). At trial, Story's attorney conducted a voir dire examination of Officer Ireland as an offer of proof regarding Ireland's interviewing Story in the patrol car and his recording the interview. Ireland testified that he had listened to the recording of this interview at the District Attorney's office. (IV R.R. at 71-73). A copy of this recording was admitted as Defense Exhibit 1. (IV R.R. at 72). During this interview, Story said that he and his girlfriend and her brother got to fighting. (Defense Exhibit 1 at 3:55:00) Office Ireland asked Story "What happened?" to which Story replied "They were jumping me and I defended myself." (Defense Exhibit 1 at 3:55:10. Story said that he saw a hammer and some knives (Defense Exhibit 1 at 3:55:17), he was on the ground (Defense Exhibit 1 at 3:55:53), and that "they hit me first" (Defense Exhibit 1 at 3:55:58). Officer Ireland inquired further about Story's claim of self-defense by asking "How are we supposed to know you defended yourself?" (Defense Exhibit 1 at 3:58:08). After a brief response, Story added that his girl's brother hit him in the back of his head, he fell down, and "she started jumping me, too." (Defense Exhibit 1 at 3:58:30). Story added that "he [Zachary Davis] hit me and I fell to the ground and she came over and kicked me." (Defense Exhibit 1 at 3:58:35).

9

Story told the officer that, if they searched the area of the fight, they should find "a hammer, a knife, all other kind of shit they had." (Defense Exhibit 1 at 4:01:40).

Story's attorney proffered this recording into evidence for the jury's consideration on the ground that is was admissible under TEX. R. EVID. 107, the rule of optional completeness, and that the statements on the recording would impeach the police officer's testimony that Story was not cooperative in exiting the house. (III R.R. at 69-70). The State objected that everything on the recording was hearsay and that admitting it would circumvent Story's need to testify in order to assert self-defense. The prosecutor added that the State had strategically not offered the recording. (III R.R. at 69). The implication is that the reason for this was to force Story to testify. The trial court sustained the State's objection, excluded the recording from evidence, and disclosed his reasoning by stating "His [Story's] statements to the officer are hearsay, if they are being offered by him." (III R.R. at 70). After the offer of proof regarding this recording, Story's attorney again urged its admission under Rule 107 as a fuller statement of matters testified to by the officer, such as Story's "voluntariness in coming out of the house and injuries and so forth." (III R.R. at 75). The State again objected on the ground of hearsay and on the ground of relevance. The court sustained both objections. (III R.R. at 75).

Later, during the cross-examination of defense witness Rene Davis, the State laboriously created the impression that Story and Rene Davis created the defense theory of self-defense during Rene Davis' four visits to Story in jail that started two weeks after the date of the stabbing.  (IV R.R. at 43-51).  This extended questioning ended with the following exchange:

Q.  So he kills your brother on September 22nd.  Right?

A.  Uh-huh.

Q.  And now by November 4th, you've gone to visit him four times?

A.  Uh-huh.

Q.  And he's telling you to tell the truth.  Right?

A.  Yes.

Q.  Okay.  And he's manipulating you when you go see him, isn't he?

A.  He's trying to.

Q.  Telling you, "You can lose one person or you can lose both of us."  Right?

A.  Yeah.

Q.  "You've got to help me out or I've got a life sentence."  So he knows he deserves a life sentence; that why he needs your help.  Right?

A.  Probably so.

Q.  Probably so.  So now, after you have went to see him four times, he has told you all this stuff, at some point after that, you come into our office.  Right?

11

A. Uh-huh.

Q. And that's when you told –

THE COURT: Ma'am, you're going to have to stop saying "uh-huh" and "huh-uh."

THE WITNESS: Oh, okay.

THE COURT: Say "yes" or "no." Okay?

THE WITNESS: Uh-huh.

Q. (BY MR. VICHA) You come into our office. Right?

A. Yeah.

Q. And you say, "I need to add some stuff to my statement about hammers and sticks." Do you remember that?

A. Yeah.

Q. After you talked to him four at times at the jail. Do you remember that?

A. Yeah. I told the people at the Advocacy Center, too.

Q. No, answer my question. Did you come in here and tell – into my office and tell me that?

A. Yeah.

(IV R.R. at 50-51).

Story's attorney for the third time urged admission of the recording, this time on the ground that it impeached the impression left by the State that Story and

Rene Davis concocted the theory of self-defense during their jail conversations and to impeach Officer Ireland's testimony that Story was not cooperative at the time of his arrest. (IV R.R. at 96-97). The judge for the third time refused to admit the recording because it was, he held, hearsay. (IV R.R. at 97).

### B. The State's relevance objection

As noted above, Story's statements on the recording made by Officer Ireland showed his cooperation with the police by talking to them about the fight with Rene Davis and Zachary Davis within minutes of his arrest. Further, his statements showed that he was asserting self-defense within 3-4 hours of the stabbing and did not create this theory weeks later at the jail, as the State took great pains to suggest to the jury.

"Relevance" is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." TEX. R. EVID. 401.

1. Story's cooperation at his arrest. Officer Ireland's testimony that Story was uncooperative at the time of his arrest carried the clear implication to the jury that he was uncooperative because he was guilty. Further, in its closing argument the State emphasized Story's lack of cooperation as an indication of his guilt. The State asserted that a suspect's running off and hiding, rather than remaining at the

13

scene of the incident, is "the number one indicator of you're guilty" (IV R.R. at 160) and that Story would not cooperate in coming out the house when the police arrived because "he knows he's in trouble." (IV R.R. at 161). Thus, Story's cooperation or lack thereof became relevant because the State made it so by declaring that it was evidence of his guilt.

It is thus incomprehensible that the trial judge could consider that the issue of whether Officer Ireland testified truthfully regarding Story's behavior surrounding his arrest was not relevant, particularly when the State had opened the door by emphasizing it as an indication of his guilt.

2. <u>Story's creating the self-defense theory weeks after the stabbing</u>. It is even more incomprehensible that the trial judge could consider that the question of when Story first asserted that he was defending himself in the fight was not relevant. Of course it was relevant. If he began to assert that he was defending himself weeks after the stabbing, that is relevant. And if he was asserting within hours of the stabbing that he was defending himself, that is relevant.

Since the State, through its cross-examination of Rene Davis, asserted that Story created the self-defense theory weeks later, the State opened the door to the issue of when Story began to assert self-defense and thus made his statements relevant.

14

The relevance of when Story began to assert self-defense is particularly clear when one considers that the State, possessing the tape during the two years between Story's arrest and the trial, knew that Story had claimed self-defense within hours of the fight with Rene Davis and Zachary Davis. But at trial the State then *deliberately created the false impression* through Rene Davis' testimony that Story created the theory weeks later while he was in jail. The State emphasized this deliberate false impression in its closing argument, asserting that the jury should not believe anything that Rene Davis said (IV R.R. at 157; 159-160). In its closing argument, the State further emphasized its deliberate false impression that Story created the self-defense story and recruited Rene Davis to assert it for him. (IV R.R. at 161). And this deliberate false impression, on any reasonable evaluation of the trial, played a critical role in the State's impeaching Rene Davis' testimony that she did assault Story during the fight with a stick that was as thick as her wrist. The State would classify such a weapon as a deadly weapon if it were prosecuting someone for using it to hit a person lying defenseless on the ground. So, Story's defense rested largely on Rene Davis' testimony that she had attacked Story with a deadly weapon and the State impeached her with its assertion that Story and she created the self-defense theory weeks later. But the trial court found that whether the State's assertion was true or not *was not even relevant*.

15

3. <u>Conclusion</u>.  This ruling by the trial court that Story's statements on the recording were not even relevant was clear error and no reasonable judge would have so ruled.

## C.  **The State's hearsay objection to the recording**

As noted above, the trial judge excluded Officer Ireland's recording of his interview of Story made 3-4 hours after the stabbing on a second ground, that of hearsay.

In Texas law, "hearsay" is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." TEX. R. EVID. 801(d).  Texas law is clear, therefore, that an out-of-court statement is not hearsay if it is not offered to prove the truth of the matter asserted but for another reason.  And Texas courts have recognized situations in which out-of-court statements were or should have been admitted to prove matters other than the truth of the matter asserted.

*Dinkins v. State*, 894 S.W.2d 330 (Tex. Crim. App. 1995) is directly on point.  The Court held that "an extrajudicial statement or writing which is offered for the purpose of showing *what* was said rather than for the *truth* of the matter stated therein does not constitute hearsay."(*Dinkins v. State* at 347).  In that case, the trial judge admitted, at the State's request, a doctor's appointment book and a patient application form filled out by the defendant showing that the defendant,

Dinkins, had had an appointment with the victim on the night that the victim was killed. The defendant objected that this writing was hearsay. A detective testified that seeing the appointment book is what pointed the investigation in Dinkins' direction. The judge admitted the appointment book, on the ground that it was not offered to prove that Dinkins had or kept the appointment but to prove how Dinkins came to be a suspect. (*Dinkins v. State* at 347). The dissent in the Court of Criminal Appeals contended that the appointment book should have been excluded as hearsay because it permitted the jury to draw the inference that Dinkins met with the victim on the night of the victim's death. The majority held, however, that "*this type of inference is permissible*; an out-of-court statement may be admitted as circumstantial evidence from which an inference may be drawn without violating the prohibition against hearsay." (*Dinkins v. State*, footnote 12, emphasis added, citing *Gholson v. State*, 542 S.W.2d 395, 398).

This clear holding is exactly on point. Whether Officer Ireland testified fully and truthfully about Story's conduct at his arrest and when Story began to assert self-defense were relevant, as seen above. The recording of Story's statements were not offered for the truth of the matter asserted, i.e. that Zachary Davis hit him first, etc. Rather, the statements were offered, first, to show that Officer Ireland's testimony that Story was uncooperative, which the State later argued to great effect evidence that Story was guilty) was not correct. Second, the

statements were offered to show that Story began to say that he was defending himself far earlier than the State had deliberately misled the jury to think. Hence, the statements were offered for non-truth matters, just like the appointment calendar in *Dinkins*. Story's statements on Officer Ireland's recording were not hearsay at all.

It is clear that the State did not want the recording admitted because it assumed that the jury would infer from it that Story did defend himself. The State told the judge that it strategically did not offer the recording and that, by offering it, Story was trying to circumvent the requirement that he testify if he wanted the jury to hear his side of the story. (III R.R. at 69). The trial judge also shows his opinion that, if Story wants the jury to hear his side of the story, then "he has the opportunity to testify and get into any of that that he wants to, doesn't he?" (IV R.R. at 97).

From this, it seems clear that the trial judge's concern, and the basis of his excluding the recording as hearsay, is that the jury, on hearing the recording of Story's interview with Officer Ireland, might infer certain facts to be true or at least possibly true, e.g. that Story acted in self-defense. *But that is exactly the holding of Dinkins v. State – such an inference is permissible*. The out-of-court statement can be admitted for a non-truth reason even though the jury might draw an inference from it.

18

This is not an isolated ruling. In another case, the Court of Appeals similarly ruled that an out-of-court statement to a detective which implicated the defendant as a suspect was properly admitted because it was not offered for the truth that the defendant was guilty but to explain how the defendant came to be a suspect. *Jones v. State*, 843 S.W.2d 487, 499 (Tex. Crim. App. 1992). Obviously, the jury might infer from the out-of-court statement that the defendant was guilty. But such an inference is permissible if the statement is not being offered to prove the truth of what it said but for another reason.

As these cases show, judges appear to have no difficulty in admitting such statements, with the attendant danger of the jury inferring some fact from them, if it is the State that is offering the statements and the danger of inference is that that the jury will infer that the defendant is guilty.

## D. <u>Harm</u>

This erroneous ruling harmed Story in that it affected a substantial right of his by exercising great influence on the jury's verdict. Without this ruling, the jury's verdict would have been a toss-up and the jury could have found Story not guilty due to self-defense.

As to whether Story stabbed Zachary Davis in self-defense during an aggravated attack by multiple assailants or whether Story stabbed him after the fight had ended and the participants separated, there was contradicting evidence

from Rene Davis and Joyce Akers. In response, the jury could have concluded that Story did act in self-defense. But the trial judge's excluding the recording of Officer Ireland's interview of Story allowed to State to make two powerful arguments of Story's guilt to the jury without fear of rebuttal. First, the judge's ruling gave the State free reign to argue that Story was not cooperative at this arrest and that this lack of cooperation was an indication of his guilt. Second, the ruling further allowed the State to eviscerate Story's key witness, Rene Davis, with no rebuttal, by deliberately creating the false impression that she and Story had created the self-defense theory several weeks after the stabbing; this false impression was used in the State's closing argument as proof that the jury should not believe anything she had said, which included her description of the fight under which the jury could have found self-defense.

It cannot be seriously argued that the judge's ruling excluding the recorded interview did not have great influence on the jury when it prevented Story from rebutting the State's two most powerful arguments regarding his guilt.

IV. **Reversible error did occur when the trial court denied Story's request for a jury instruction on self-defense because the issue was raised by the evidence.**

A. **The legal standard**

Appellate review of error in a jury charge involves a two-step process. First the appellate court must determine if error occurred. If error did occur, then the

appellate court must evaluate whether sufficient harm resulted from the error to require reversal.  *Abdnor v. State*, 871 S.W.2d 726, 731-732  (Tex. Crim. App. 1994).

Use of deadly force against another in self-defense is justified when the actor reasonably believes such force is immediately necessary to protect the actor or a third person from the other's use or attempted use of deadly force.  TEX. PEN. CODE §9.32(a).

In deciding whether an instruction on a defensive issue should have been submitted to the jury, an appellate court must review the evidence in the light most favorable to the defendant.  *Ferrel v. State*, 55 S.W.3d 586, 591 (Tex. Crim. App. 2001).  This means that an appellate court does not apply the usual rule of appellate deference to the trial court's ruling.  "Quite the reverse, we view the evidence in the light most favorable to the defendant's requested submission." *Bufkin v. State*, 207 S.W.3d 779, 782 (Tex. Crim. App. 2006).

Further, in Texas law,

> it is well-settled that a defendant has the right to an instruction on any defensive issue raised by the evidence, whether that evidence is weak or strong, unimpeached or contradicted, and regardless of what the trial court may or may not think about the credibility of the defense.

*Granger v. State*, 3 S.W.3d 36, 38 (Tex. Crim. App. 1998) (citations omitted).

Significantly, the jury may *infer* the existence of elements of a defense if there is some evidence from any source that, if taken as true by the jury, would

21

support a rational inference that the element is true. *Shaw v. State*, 243 S.W.3d 647, 657-658 (Tex. Crim. App. 2007). The full statement of this critical principle is this:

> Under [Tex. Pen. Code] §2.03(c), a defense is supported (or raised) by the evidence if there is some evidence, from any source, on each element of the defense that, if believed by the jury, would support a rational inference that the element is true. In determining whether a defense is supported, a court must rely on its own judgment, formed in the light of its own common sense and experience, as to the limits of rational inference from the facts proven. If a defense is supported by the evidence, then the defendant is entitled to an instruction on that defense, even if the evidence supporting the defense is weak or contradicted, and even if the trial court is of the opinion that the evidence is not credible. But the evidence must be such that it will support a rational jury finding as to each element of the defense.

*Shaw v. State* at 657-658.

Finally, if there is some evidence that a defendant's actions were justified under one of the provisions of Chapter 9 of the Texas Penal Code, such as self-defense, the State has the burden of persuasion to disprove the justification beyond a reasonable doubt. *Alonzo v. State*, 353 S.W.3d 778, 781 (Tex. Crim. App. 2011).

**The trial testimony**

It was uncontroverted at trial that the victim, Zachary Davis, attacked Story on the back porch of the residence, that Story fell to the ground, and that Zachary Davis and Rene Davis began to hit Story. (IV. R.R. at 34-35; 37-38; 46; 52). Rene Davis further testified that Story did not choke her or make any physical contact with her before Zachary Davis attacked Story. (IV R.R. at 32-33; 54-55; 58). This

22

testimony was supported by that of the Waco Police Department Crime Scene Technician, Angelika McAllister, who testified that she came to the scene of the stabbing the same night and did not observe any sign of injury to Rene Davis' neck or other part of her body. (IV R.R. at 105-106). Thus, there was no physical evidence to support the State's contention that Zachary Davis was defending Rene Davis when he (Zachary Davis) attacked Story. Indeed, the physical evidence regarding Rene Davis' lack of visible injuries refuted the State's contention.

Rene Davis testified that, as she and her brother Zachary Davis were beating the recumbent Story, she was hitting Story with a stick whose width matched that of her wrist and that was 2-3 feet long. (IV R.R. at 34-35; 52).

## B. The trial court's denial of the self-defense instruction

There was an extended informal charge conference regarding whether a self-defense instruction should be placed in the Charge of the Court regarding guilt-innocence. (IV R.R. at 107-123). Initially the trial court said that he would give a self-defense instruction. (IV R.R. at 107). After a lunch recess, however, the trial court again brought up the self-defense instruction and eventually refused to give it. (IV R.R. at 108, 123). During this informal charge conference, even the State's attorneys were suggesting language for the self-defense instruction that would satisfy the trial judge's concerns, which indicates they thought that the self-defense instruction was warranted. IV R.R. at 119-120.

23

The trial court conceded the point that deadly force was used against Story when Rene Davis hit him with the stick. (IV R.R. at 109).

But the trial court finally refused to give a jury instruction in the charge related to self-defense. (IV R.R. at 123).

The trial judge reasoned thaat Story was not entitled to a self-defense instruction because there had been no direct testimony that Story reasonably believed that he had to use deadly force to protect himself against deadly force. (IV R.R. at 109). Story's trial attorney responded that this conclusion can be gleaned from the totality of the circumstances, i.e. inferred from the evidence. (IV R.R. at 110). Story's trial attorney asserted that, because Story did use deadly force, he therefore must have believed that its use was necessary. (IV R.R. at 112). The trial court dismissed this argument as an attempt to "bootstrap" Story's reasonable belief in the need to use deadly force. (IV R.R. at 112). The court said "Somebody would have to say, 'Look, a reasonable person would have been in fear of their life by what Ms. Davis testified to. Unlawful deadly force was being used against him.' That's what is absent here is any evidence that your client reasonably believed his use of deadly force was justified." (IV R.R. at 112). This statement by the trial court shows that he required direct testimonial evidence from some witness that Story was or would have been in fear of his life during the beating by Zachary Davis and Rene Davis.

24

After further study off the bench, the trial court reiterated that testimonial evidence of Story's reasonable belief that deadly force was necessary was required and that it was missing in the trial testimony. The trial court continued, "None of those witnesses that testified said that this client reasonably believed -- that this defendant reasonably believed that he was justified in using deadly force because unlawful deadly force was being used against him, nothing." (IV R.R. at 118). The court finally said, "There is absolutely no evidence or testimony that the defendant in this case reasonably believed that deadly force was necessary to protect himself against somebody else's use of deadly – of unlawful deadly force. There simply isn't anything from anybody that says that or that even infers it." (IV R.R. at 122).

## C. **Story's trial counsel's preservation of the error**

Story's trial counsel objected to the trial court's refusal to give a self-defense instruction in the charge and the court overruled the objection. IV R.R. at 123-124. Story's counsel then offered his proposed jury instruction on self-defense as a trial exhibit and the court admitted it for purposes of the record as Defense Exhibit 3. (IV R.R. at 124-126; VII R.R. at 192-193).

## D. **Argument**

The trial court erred in refusing the request for a self-defense instruction because the issue was raised by the evidence. Specifically, there was evidence of

the two statutorily-required matters:  that deadly force was used against Story and that he reasonably believed that his own use of deadly force was immediately necessary to protect himself against the deadly force being asserted against him. TEX. PEN. CODE §9.32(a).

*First*, *as to whether Story had a reasonable belief that the use of deadly force was immediately necessary to protect himself against deadly force*, there was evidence of this at trial and the trial court erred in ruling that there was not.  The trial court's requirement of direct testimonial evidence of Story's reasonable belief in the immediate need for deadly force, discussed above, does not follow the clear holding in *Shaw v. State*, referred to above.  The *Shaw* court said "a defense is supported (or raised) by the evidence if there is *some* evidence, from *any* source, on each element of the defense that, if believed by the jury, would support a *rational inference* that the element is true." *Shaw v. State*, 243 S.W.3d 647, 657-658 (Tex. Crim. App. 2007) (emphasis added).

The uncontroverted evidence at trial showed that Story was on the ground, being assaulted by two adults, one of whom was hitting him with a stick that was 2-3 feet long and as thick as a female's wrist, immediately before he stabbed Zachary Davis.  As noted above, even the trial judge conceded that deadly force was being used against Story.  (IV R.R. at 109).

26

The trial court erred in requiring direct testimonial evidence from some witness that Story had a reasonable belief that he must immediately use deadly force. The trial court further erred, to the extent that it even considered the matter, in concluding, if it did, that there was not sufficient evidence to allow the rational inference of Story's reasonable belief. Following *Shaw*, there was enough evidence for the jury to rationally infer that Story reasonably believed that it was necessary for him to immediately use deadly force to defend himself against deadly force. This becomes even clearer when the evidence supporting the giving of the self-defense instruction is viewed "in the light most favorable to the defendant's requested submission." *Bufkin v. State*, 207 S.W.3d 779, 782 (Tex. Crim. App. 2006). "If a defense is supported by the evidence, then the defendant is entitled to an instruction on that defense, even if the evidence supporting the defense is weak or contradicted, and even if the trial court is of the opinion that the evidence is not credible." *Shaw v. State*, 243 S.W.3d 647, 657-658 (Tex. Crim. App. 2007). The trial court here ruled that the evidence of Story's reasonable belief did not even amount to weak or contradicted or not credible evidence – it ruled that there was no evidence and it reached this conclusion because it erroneously required direct testimonial evidence.

The trial court erred in refusing to give the self-defense instruction because there was sufficient evidence to allow the jury to reasonably infer that Story, being

27

beaten by two adults, one of whom was using a stick that could be called a club, believed that the use of deadly force was immediately necessary.

*Secondly*, *as to unlawful force being used against Story*, there was some evidence that unlawful force was being used against him. As noted above, the trial court conceded that deadly force was being used against Story. (IV R.R. at 109). Further, as discussed above, there was contradictory evidence at trial regarding whether Story had grabbed Rene Davis by the throat before he was attacked by Zachary Davis. Rene Davis testified, however, that Story had not grabbed her or touched her before Zachary Davis attacked Story. (IV R.R. at 32-33; 54-55; 58). If her testimony was taken as true by the jury, then Zachary Davis' attack on Story was a use of unlawful force against Story. Therefore, to the extent that the trial court refused the self-defense instruction on the ground that only lawful force was being used against Story, the trial court erred. There was some evidence from which the jury could rationally conclude that unlawful force was being used against Story. Again, this is even clearer when the correct legal standard is applied: the trial court was required to view the evidence supporting submission of the self-defense instruction "in the light most favorable to the defendant's requested submission." *Bufkin v. State*, 207 S.W.3d 779, 782 (Tex. Crim. App. 2006)

*In conclusion*, there was evidence of the two statutorily-required facts, i.e. (1) unlawful deadly force was used against Story and (2) Story reasonably believed

that the use of deadly force was immediately necessary to defend himself from the other's use of deadly force. Therefore, the trial court erred in refusing Story's request for a self-defense instruction.

### E. **Harm**

The law in Texas on harm in jury charge error is:

> Upon a finding of error in the jury charge, there are separate standards of review depending on whether the defendant timely objected to the jury instructions. If the defendant timely objected to the jury instructions, then reversal is required if there was some harm to the defendant. If the defendant did not timely object to the jury instructions . . . then reversal is required only if the error was so egregious and created such harm that the defendant did not have a fair and impartial trial. Jury-charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory. In examining the record to determine whether charge error is egregious, we consider: (1) the entirety of the jury charge itself, (2) the state of the evidence, (3) the arguments of counsel, and (4) any other relevant information revealed by the trial record as a whole. Egregious harm is a difficult standard to meet and such a determination must be made on a case-by-case basis. Neither party bears the burden on appeal to show harm or lack thereof under this standard.

*Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (internal citations omitted).

The erroneous omission from the charge of a defensive instruction such as self-defense is "generally harmful" because it eliminates the defendant's defense. *Cornet v. State*, 417 S.W.3d 446, 451 (Tex. Crim. App. 2013).

29

Since Story did object to the trial court's refusal of the self-defense instruction, this case must be reversed if Story suffered "any harm" from the refusal. And the harm could hardly be more obvious. The trial court's refusal to give the self-defense instruction in the charge eviscerated Story's defense. The jury could not even consider whether Story acted in self-defense. So, it is clear that Story suffered some harm.

But even if this appellate court holds that Story did not preserve error regarding the trial judge's refusal to give the self-defense instruction, this case still should be reversed, for the harm Story suffered was egregious under the *Almanza* standard. By refusing to allow the jury to even consider whether Story acted in self-defense, the trial court's ruling affected the very basis of the case by eliminating any defense. Further, the trial court's ruling deprived Story of a valuable right, that of presenting a defense. And the trial judge's ruling vitally affected a defensive theory by entirely eliminating Story's sole defense, i.e. self-defense.

## **PRAYER**

Because the trial judge erred in excluding the interview of Story recorded by Officer Ireland and because this erroneous ruling affected a substantial right of Story, and because the trial judge erred in refusing Story's request for a jury

instruction on self-defense, Story requests that the Court of Appeals reverse the judgment of "Guilty" and remand this case to the trial court for a new trial.

Respectfully submitted,

**LAW OFFICE OF DOYLE L. YOUNG, P.C.**

/s/ Doyle L. Young
Doyle L. Young
State Bar No. 00797718

100 N. 6th Street, Suite 600
P.O. Box 2174
Waco, TX 76703
(254) 855-1108 phone
(800) 620-7961 fax
**Attorney for Appellant**

## Certificate of Service

I hereby certify that a copy of this brief was served by email on the McLennan County District Attorney's office, Gabriel Price, on May 3, 2015, at his email address: Gabe.Price@co.mclennan.tx.us. I further certify that on the same date a copy of this document was mailed via Certified Mail, Return Receipt Requested, to Appellant Allan Latoi Story, Beto Unit – TDCJ, 1391 FM 3328, Tennessee Colony, TX 75880.

/s/
Doyle Young

## Certificate of Compliance

I hereby certify that this brief complies with the word-count limit of TEX. R. APP. PROC. 9 in that the brief contains 7,208 words.

/s/ Doyle Young
Doyle Young